609 F.2d 514
 197 U.S.App.D.C. 259
 The NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE et al.
v.
Benjamin R. CIVILETTI, in his Official Capacity as the
Attorney of the United States, et al., Appellants.
Marilyn W. ANDRULIS et al.
v.
UNITED STATES of America et al., Appellants.
 Nos. 78-1639, 78-2039.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 23, 1979.
Decided Sept. 26, 1979.
Rehearing Denied Jan. 4, 1980.
 
 Janis Sposato, Atty., Dept. of Justice, Washington, D. C., a member of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., at the time the brief was filed, Earl J. Silbert, U. S. Atty. Gen., Washington, D. C., at the time the brief was filed, and William Kanter and Mark H. Gallant, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellant in No. 78-2039. Dennis A. Dutterer, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellant in No. 78-2039.
 Cynthia L. Attwood, Atty., Dept. of Justice, Washington, D. C., with whom Drew S. Days III, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, and Walter W. Barnett, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants in No. 78-1639.
 J. Francis Pohlhaus, Washington, D. C., for appellee in No. 78-1639.
 I. Michael Greenberger, Washington, D. C., for appellee in No. 78-2039.
 Linda R. Singer and Ronald A. Schechter, Washington, D. C., were on the brief for amicus curiae, urging affirmance in No. 78-2039 only.
 Before WRIGHT, Chief Judge, WILKEY, Circuit Judge, and LARSON, Senior District Judge.*
 Opinion for the court filed by Senior District Judge LARSON.
 Dissenting opinion filed by Chief Judge J. SKELLY WRIGHT.
 LARSON, Senior District Judge:
 The above-captioned cases are consolidated on appeal because both raise the same central issue that is, whether the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, permits an award of fees against the United States. After careful deliberation, we conclude that the Awards Act does not operate as a waiver of sovereign immunity in this context. Therefore, as to the award of attorney's fees by the courts below, we reverse.
 In Andrulis v. United States, plaintiffs Dr. Marilyn W. Andrulis and Andrulis Research Corporation (ARC) brought an action for damages, declaratory and injunctive relief in which they alleged, Inter alia, that ARC had been unlawfully terminated from a program administered by the Small Business Administration (SBA) pursuant to § 2(8)(a) of the Small Business Act, 15 U.S.C. § 637(a). Section 8(a) empowers the SBA to enter into contracts with other federal departments and agencies and to arrange, without competitive bidding, for the performance of these contracts by small business concerns. In their complaint, plaintiffs charged that ARC had been excluded from the § 2(8)(a) program as a result of race and sex discrimination in violation of 42 U.S.C. §§ 1981, 1985(3) and 2000d.
 On November 11, 1977, the district court[1] issued a temporary restraining order in the Andrulis case. Thereafter, the SBA agreed to reinstate ARC as a participant in the § 2(8)(a) program and the parties entered into a consent decree to that effect. Relying upon 42 U.S.C. § 1988, plaintiffs next applied for and were granted $18,739.00 in attorney's fees and $1,135.03 in costs and disbursements. As to the award of attorney's fees, the government appeals.
 NAACP v. Civiletti, the second case before this Court, grew out of the fatal shooting in 1971 of Carnell Russ, a black male, by a white Arkansas law enforcement officer in the course of an arrest for a traffic violation. The officer was subsequently acquitted of manslaughter charges by a state court jury. After reviewing the transcript of the trial proceedings, as well as FBI reports, the Department of Justice decided not to prosecute anyone under the federal criminal civil rights statute, 18 U.S.C. § 242.
 
 
 1
 Following the decision not to prosecute, the NAACP and the Russ family brought suit under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1985, challenging the adequacy of the federal investigation and the decision not to prosecute. In essence, plaintiffs claimed that the Justice Department had deferred unlawfully to the state proceedings pursuant to a policy established in 1959 by then Attorney General William Rogers of not following a state prosecution with a federal trial for the same act absent compelling reasons. Plaintiffs charged that this policy was unreasonable and racially discriminatory as applied in the Russ case.
 
 
 2
 In February 1977, while this suit was pending in the district court, Attorney General Griffin Bell issued a memorandum dealing with prosecutions of civil rights violations by the Justice Department. The memorandum indicated that the Department would henceforth evaluate "each and every allegation of a violation of the civil rights laws . . . on its own merits" irrespective of related state enforcement action. Agreeing that the Bell memorandum effectively mooted plaintiffs' claim, the parties to this action moved jointly to dismiss. The district court[2] granted the motion and plaintiffs subsequently sought and were awarded $26,300.00 in attorney's fees and $612.25 in costs under 42 U.S.C. § 1988. The decision to award attorney's fees is the subject of this appeal.
 
 
 3
 To recover attorney's fees against the United States, a prevailing party must first surmount a formidable barrier, the doctrine of sovereign immunity. Under well established precedent, waivers of federal sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). With respect to awards of attorney's fees, the policy against implied waivers of federal sovereign immunity is embodied in 28 U.S.C. § 2412[3] which has been consistently construed as immunizing the United States against attorney's fees awards absent clear or express statutory authority to the contrary. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 267-68, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Fitzgerald v. United States Civil Service Commission, 180 U.S.App.D.C. 327, 330, 554 F.2d 1186, 1189 (D.C.Cir.1977); Natural Resources Defense Council, Inc. v. EPA, 168 U.S.App.D.C. 111, 113, 512 F.2d 1351, 1353 (D.C.Cir.1975). Such clear statutory authority may be found in language referring specifically to the liability of the United States. Thus, for example, Title II of the Civil Rights Act of 1964 provides:
 
 
 4
 "In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and The United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000a-3(b) (emphasis added).[4]
 
 
 5
 Alternatively, statutory authorization may be inferred by necessary implication from the statutory context in which a fee provision arises. This rationale was central to the First Circuit's conclusion in Natural Resources Defense Council, Inc. v. EPA, 484 F.2d 1331 (1st Cir. 1973), that an award of attorney's fees against the federal government was authorized under § 304(d) of the Clean Air Act, 42 U.S.C. § 7604. In that case, the government contended, Inter alia, that a prevailing party in a citizen suit brought against the United States under § 304 of the Act could not obtain attorney's fees from the federal government because the attorney's fee provision of § 304(d),[5] while providing for recovery by "any party," did not specifically mention the United States by name. The First Circuit responded by noting that the government's "reading of the statute is in sharp conflict with its plain words, which authorize the award against 'any party' and which, in § 304(a), specifically authorize suits with the United States as a party." 484 F.2d at 1336, n.5. Because § 304(a) of the Clean Air Act specifically permitted suits against the Administrator of the EPA, the necessary implication was that Congress had intended the fee provision of § 304(d), which made express reference to § 304(a), to allow recovery against the United States.
 
 
 6
 In the context of the above discussion, the question before this Court is whether the Civil Rights Attorney's Fees Awards Act of 1976 expressly authorizes the recovery of fees against the United States so as to overcome the barrier of sovereign immunity contained in 28 U.S.C. § 2412. As amended, 42 U.S.C. § 1988 provides in relevant part:
 
 
 7
 "In any action or proceeding to enforce a provision of sections (1981, 1985 or 2000d of Title 42) the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[6]
 
 
 8
 Appellees submit that the Awards Act by its plain language clearly and unequivocally permits awards of attorney's fees against the United States by authorizing a fee award in "any action or proceeding" to enforce, Inter alia, the Reconstruction Era Civil Rights statutes (42 U.S.C. §§ 1981-1983, 1985, 1986) and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Appellees find support for their position in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), in which the Supreme Court held the language of the Awards Act sufficient to overcome the immunity granted the states under the Eleventh Amendment to the United States Constitution. In so holding, the Court stated:
 
 
 9
 "The Act itself could not be broader. It applies to 'any' action brought to enforce certain civil rights laws. It contains no hint of an exception for State defending injunction actions; . . . ." 98 S.Ct. at 2575.
 
 
 10
 Similarly, appellees contend, the Awards Act contains no hint of an exception for the federal government.
 
 
 11
 In their reading of the Awards Act, we think appellees assign too much weight to Congress' use of the phrase "any action." That phrase has repeatedly appeared in attorney's fees provisions, yet when in the past Congress has sought to override 28 U.S.C. § 2412 it has apparently considered it necessary to add a phrase explicitly establishing the liability of the United States.[7] Generally, in construing a statute, we "are obliged to give effect, if possible, to every word Congress used." Reiter v. Sonotone Corp., --- U.S. ---- at ----, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979), citing United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Unless we are to regard the prior specific references to the United States inserted in fee provision statutes as mere surplusage, we must assume that Congress considered the "any action" language insufficient standing alone to waive federal sovereign immunity.
 
 
 12
 Considering that the Awards Act was enacted largely in response to the Supreme Court's ruling in Alyeska Pipeline Service Co. v. Wilderness Society, supra,[8] and given the Alyeska mandate that, to overcome the barrier of 28 U.S.C. § 2412, fee awards against the United States must be "expressly provided for by statute," 421 U.S. at 267-68, 95 S.Ct. 1612, it is difficult to believe that if Congress had intended to override § 2412, it would not have used language in the Awards Act at least as clear and unequivocal as it has used in the past to waive federal sovereign immunity. Cf. Shannon v. United States Department of Housing and Urban Development, 433 F.Supp. 249, 251 (E.D.Pa.1977), Aff'd, 577 F.2d 854 (3d Cir.), Cert. denied, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978) ("The unequivocal language to which the Court adverted in Alyeska and that contained in (prior statutes authorizing attorney's fees awards against the United States) in stark contrast to the silence of the Fees Awards Act.") Instead, the only specific waiver contained in the Awards Act occurs with respect to actions brought "by or on behalf of the United States . . . to enforce, or charging a violation of, a provision of" the Internal Revenue Code. See Aparacor, Inc. v. United States, 571 F.2d 552 (Ct.Cl.1978). While the liability of the United States for fees in tax cases might have been more specifically defined, Congress' intent to waive federal immunity in the IRS suits is necessarily inferred since the United States and the taxpaying public are the only parties conceivably included within the provision, and the Awards Act allows an award to "the prevailing party, other than the United States." No similar inference necessarily arises with respect to the remaining portions of the Act since the United States is neither the sole nor even the most likely defendant under the civil rights statutes in question.[9]
 
 
 13
 Considering the plain language of the Awards Act, we agree with the government that the most that can fairly be said is that the Act does not, on its face, preclude an assessment of attorney's fees against the United States. As this Court indicated in Fitzgerald v. United States Civil Service Commission, supra, 180 U.S.App.D.C. at 330, 554 F.2d at 1189, however, the "absence of" language "contrary" to an award of attorney's fees against the government is not enough. There "must be (an) unequivocally expressed" affirmative authorization to overcome 28 U.S.C. § 2412.
 
 
 14
 We find nothing in the Supreme Court's opinion in Hutto v. Finney, supra, to contradict our reading of the Awards Act. In ruling that state and local governments are liable for attorney's fees under the Act, the Court in Hutto v. Finney rejected the state's argument that in order to abrogate the state's immunity under the Eleventh Amendment, Congress must "enact express statutory language making the States liable." 98 S.Ct. at 2576. The Court emphasized that the Act imposes attorney's fees "as a part of costs" and that costs have traditionally been awarded against the states without regard to the Eleventh Amendment. Id. The Court then concluded:
 
 
 15
 "It is much too late to single out attorney's fees as the one kind of litigation costs whose recovery may not be authorized by Congress without an express statutory waiver of the States' immunity." Id. at 2577-78.
 
 
 16
 In Hutto v. Finney, the Supreme Court considered the absence of an express statutory waiver no obstacle to an award of attorney's fees against the states. The same cannot be said with respect to federal liability. In the case of the federal government, there is no long tradition of awarding costs as a matter of course. Instead, prior to the amendment of 28 U.S.C. § 2412 in 1966, costs were recoverable against the United States only if expressly provided for by statute.[10] Moreover, § 2412 explicitly requires what the Supreme Court concluded the Eleventh Amendment does not that is, an express abrogation of immunity from attorney's fees awards.
 
 
 17
 In concluding that the Awards Act authorizes awards of fees against the states, the Court in Hutto v. Finney also relied on legislative history which focused directly on state liability and established unequivocally that Congress intended the Awards Act to waive state immunity. 98 S.Ct. at 2575-76. No such unequivocal indication of congressional intent exists with respect to the issue of federal immunity. The floor debate surrounding passage of the Awards Act contains indications of divergence of opinion among members of Congress as to the implications of the Act for federal liability.[11] The House and Senate Committee Reports on the attorney's fee legislation contain no discussion of the question of federal liability. This silence appears significant since the Committee Reports are the references members of Congress are probably most likely to consult before casting their votes for an understanding of the purpose and effect of a bill. Mastro Plastics v. NLRB, 350 U.S. 270, 287-89, 76 S.Ct. 349, 100 L.Ed. 309 (1956); American Airlines, Inc. v. CAB, 125 U.S.App.D.C. 6, 365 F.2d 939 (D.C.Cir.1966); Sutherland, Statutes and Statutory Construction, § 48.06, p. 203 (4th ed.). Had Congress intended to abrogate federal sovereign immunity for purposes of the Awards Act, some discussion of the matter by the respective House and Senate Committees responsible for the legislation in their Committee Reports might have been expected.
 
 
 18
 The only direct support found in either Committee Report for the proposition that the federal government might be liable for fees under the Awards Act is a citation to Hills v. Gautreaux, 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976), a case involving a Title VI claim brought against the Secretary of Housing and Urban Development, which appears in the House Report as part of a string of cases cited as examples of instances in which government officials have been defendants in civil rights actions. H.Rep. No. 94-1558, 94th Cong., 2d Sess. at 7 (1976). This oblique reference to federal liability is, we think hardly sufficient to constitute the kind of clear statutory authorization required to waive federal sovereign immunity with respect to attorney's fees awards.[12]
 
 
 19
 Given the importance of attorney's fees in ensuring enforcement of our civil rights laws, a strong policy argument can be made that the Awards Act should permit the recovery of attorney's fees against the federal government.[13] We leave for the Congress, however, the decision of whether to amend the Awards Act to explicitly allow recovery of fees against the United States, realizing that to do otherwise would be to exceed the limits of our interpretive function.
 
 
 20
 Insofar as they award attorney's fees to appellees, the orders of the district courts are reversed.
 
 J. SKELLY WRIGHT, Chief Judge, dissenting:
 
 21
 The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976), authorizes the award of attorneys' fees to "the prevailing party, other than the United States," in " 'any action or proceeding' to enforce (certain civil rights laws)."[1] The "necessary implication," See majority opinion at 197 U.S.App.D.C. at --- , 609 F.2d at 516, from the language of the statute, the purposes behind its enactment, and its legislative history is that Congress intended to authorize fee awards against the United States under the Act.[2] Appellees in both cases before us are "prevailing parties" within the meaning of the Act. For these reasons, I would affirm the judgments of the District Court in both cases.
 
 
 22
 * The majority rightly points out that a party seeking to recover attorneys' fees against the United States must surmount the barrier posed by the doctrine of sovereign immunity.[3] A waiver of sovereign immunity " 'cannot be implied but must be unequivocally expressed.' " United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), Quoting United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Supreme Court in Testan described the test for the specificity required as "whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government * * *.' Eastport S. S. Corp. v. United States, 178 Ct.Cl., at 607, 372 F.2d, at 1009; Mosca v. United States, 189 Ct.Cl. 283, 290, 417 F.2d 1382, 1386 (1969), cert. denied, 399 U.S. 911 (90 S.Ct. 2197, 26 L.Ed.2d 565) (1970). We are not ready to tamper with these established principles * * *." 424 U.S. at 400, 96 S.Ct. at 954. Thus the question presented by these cases is whether Section 1988 "can fairly be interpreted as mandating (payment of attorneys' fees) by the Federal Government." The majority says that this may be done in one of two ways: (1) statutory language that specifically refers to the liability of the United States; and (2) necessary implication from the statutory context in which the fee provision arises. Majority opinion at 197 U.S.App.D.C. at ---- 609 F.2d at 516 - 517. In my view, Section 1988 satisfies the latter test.
 
 II
 
 23
 Congress enacted Section 1988 in response to the Supreme Court decision in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In Alyeska the Court held that federal courts do not have the power to award attorneys' fees to prevailing parties without specific statutory authorization. Prior to that decision lower federal courts had followed the fee-shifting policies Congress enacted in the attorneys' fees provisions of several civil rights statutes, for example, Titles II and VII of the Civil Rights Act of 1964,[4] 42 U.S.C. §§ 2000a-3(b), 2000e-5(k) (1976), and awarded attorneys' fees to prevailing parties in cases brought under other civil rights laws.[5] In Congress' view Alyeska
 
 
 24
 created anomalous gaps in our civil rights laws whereby awards of fees are * * * suddenly unavailable in the most fundamental civil rights cases. For instance, fees are now authorized in an employment discrimination suit under Title VII * * *, but not in the same suit brought under 42 U.S.C. § 1981, which protects similar rights but involves fewer technical prerequisites to the filing of an action. * * *
 
 
 25
 S. Rep. No. 94-1011, 94th Cong., 2d Sess. 4 (1976). To eliminate these "anomalous gaps" Congress enacted the Civil Rights Attorneys' Fees Awards Act.
 
 
 26
 One theme that runs through the legislative history of the Act is the belief that attorneys' fees awards are crucial to vigorous enforcement of the civil rights statutes covered by Section 1988. Quoting the words of the late Supreme Court Justice Tom Clark, the Senate Report declared:
 
 
 27
 "Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose. * * * Without counsel fees the grant of Federal jurisdiction is but an empty gesture * * *. Hall v. Cole, 412 U.S. 1 (93 S.Ct. 1943, 36 L.Ed.2d 702) (1973), quoting 462 F.2d 777, 780-81 (2d Cir. 1972)."
 
 
 28
 S.Rep. No. 94-1011, Supra, at 3.[6] The award of attorneys' fees is crucial because these civil rights laws depend heavily on private enforcement.[7] And as this court has noted, the policy favoring private enforcement of the civil rights laws is particularly compelling when a federal agency or official is the defendant. Unlike the cases involving private or state defendants, the complainants are not merely "private attorneys general"; they are the only attorneys general.[8] The Department of Justice does not sue other federal government agencies for violations of the civil rights laws. Indeed, as in the instant cases, the Justice Department is frequently counsel for the other side. Thus the reasons behind the enactment of Section 1988 support the inference that it authorizes awards of attorneys' fees against the United States and caution against interpreting the statute in a manner that will frustrate Congress' purposes.[9] As this court has said, "(O)ur duty is to favor an interpretation which would render the statutory design effective in terms of the policies behind its enactment and to avoid an interpretation which would make such policies more difficult of fulfillment, particularly where * * * that interpretation is consistent with the plain language of the statute." National Petroleum Refiners Ass'n v. FTC, 157 U.S.App.D.C. 83, 90, 482 F.2d 672, 689 (1973), Cert. denied, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). This is particularly essential where civil rights statutes are involved. Courts must accord such a statute "a sweep as broad as its language." United States v. Price, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Griffin v. Breckenridge, 403 U.S. 88, 97, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).
 
 III
 
 29
 Congress used very broad language when it enacted Section 1988. The Act authorizes the award of attorneys' fees in "Any action or proceeding." (Emphasis added.) The Supreme Court recently confirmed the Act's broad reach when it held in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), that the language of the statute was sufficient to overcome the states' Eleventh Amendment immunity. In so holding the Court said:
 
 
 30
 The Act itself could not be broader. It applies to "any" action brought to enforce certain civil rights laws. It contains no hint of an exception for States defending injunction actions * * *.
 
 
 31
 Id. at 694, 98 S.Ct. at 2575. The language of the Act is also broad enough to apply to actions against the federal government. While the Act does not specifically mention the liability of the United States in civil rights cases,[10] not every attorneys' fees provision that has been found to authorize fee awards against the federal government has specifically mentioned the liability of the United States.
 
 
 32
 For example, in Natural Resources Defense Council, Inc. v. EPA, 484 F.2d 1331 (1st Cir. 1973), the First Circuit held that Section 304(d) of the Clean Air Act, now codified at 42 U.S.C. § 7604(d) (Supp. I 1977), authorized an award of attorneys' fees against the United States. The court rejected the Government's claim that fee awards against the federal government were not authorized because the Act's "any party" language did not specifically refer to the liability of the United States.[11] Moreover, this court recently held, without opposition from the Government, that the recent amendment of Section 307 of the Clean Air Act, 42 U.S.C. § 7607(f) (Supp. I 1977), to permit fee awards "(i)n any judicial proceeding under this section"[12] authorizes fee awards against the federal government. Sierra Club v. EPA, D.C. Cir. No. 76-1037, order of April 27, 1979 (award of attorneys' fees of $11,760 to Sierra Club ordered paid by EPA) (case consolidated with ASARCO v. EPA, D.C. Cir. No. 76-1030). Equally instructive is the fact that Congress only recently enacted Section 505(b) of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub.L. No. 95-602, 92 Stat. 2983, an attorneys' fees provision which, in the words of its sponsor, "parallels the Civil Rights Attorneys' Fees Awards Act of 1976 * * *." 124 Cong.Rec. S15590 (daily ed. Sept. 20, 1978) (remarks of Sen. Cranston). The language of Section 505(b) is virtually the same as that of Section 1988.[13] Section 505(b)'s sponsor and the accompanying Committee Reports made it clear that this attorneys' fee provision is to be used to vindicate rights against the federal government.[14] If Congress thought Section 505(b) was precise enough to apply to the United States, then the same may be said of the statute after which it was modeled, Section 1988.
 
 IV
 
 33
 The legislative history of Section 1988 provides substantial support for the conclusion that Congress intended to authorize fee awards against the United States under the Act.
 
 
 34
 * There are numerous indications in the Senate and House Reports that Congress intended Section 1988 to have substantially the same coverage as the attorneys' fees provisions of the 1964 Civil Rights Act which apply to the federal government. Both Reports stressed the fact that the legislation was designed to make our civil rights laws consistent. The Senate Report said: "The purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by (the Alyeska decision), and to achieve consistency in our civil rights laws." S.Rep. No. 94-1011, Supra, at 1. In a similar vein the House Report stated: "In order to achieve uniformity in the remedies provided by Federal laws guaranteeing civil and constitutional rights, it is necessary to add an attorney fee authorization to those civil rights acts which do not presently contain such a provision." H.R.Rep. No. 94-1558, 94th Cong., 2d Sess. 1 (1976). Both Reports stressed that Section 1988 was fashioned after the attorneys' fees provisions of the 1964 Civil Rights Act. The Senate Report noted: "S. 2278 follows the language of Titles II and VII of the Civil Rights Act of 1964 * * *." S.Rep. No. 94-1011, Supra, at 2. The House Report stated: "H.R. 15460 tracks the language of the counsel fee provisions of Titles II and VII of the Civil Rights Act of 1964 * * *." H.R.Rep. No. 94- 1558, Supra, at 5. The Reports also explained that the standards for awarding fees under Section 1988 would "be generally the same as under the fee provisions of the 1964 Civil Rights Act." S.Rep. No. 94-1011, Supra, at 4. The natural inference from all these factors is that Congress intended Section 1988's coverage to be the same as the coverage of the fee provisions of the 1964 Act. That Congress omitted the language specifically referring to the liability of the United States for attorneys' fees is not significant.[15] Given all the indications that Congress intended Section 1988 to be just like the other civil rights attorneys' fees provisions, it is reasonable to assume that if Congress had intended to depart from the norm by immunizing the federal government from liability it would have done so explicitly.
 
 
 35
 The majority agrees that another section of the House Report contains further support for the view that Section 1988 applies to the federal government. See majority opinion at 197 U.S.App.D.C. at --- - ---, 609 F.2d at 517 - 518. In discussing the issue of fee awards to prevailing defendants, the House Report pointed out:
 
 
 36
 (I)t should further be noted that governmental officials are frequently the defendants in cases brought under the statutes covered by H.R. 15460 (the bill which became § 1988). See, e.g., * * * Hills v. Gautreaux, (425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976)). Such governmental entities and officials have substantial resources available to them through funds in the common treasury, including the taxes paid by the plaintiffs themselves. * * * The greater resources available to governments provide an ample base from which fees can be awarded to the prevailing plaintiff in suits against governmental officials or entities.
 
 
 37
 H.R.Rep. No. 94-1558, Supra, at 7 (footnote omitted). By citing Hills v. Gautreaux, a case involving a Title VI claim brought against a federal cabinet officer, as an example of a case in which a government official could be a defendant in a civil rights suit, and by pointing out that such officials would be liable for fee awards under Section 1988, the Report supports the inference that Congress intended the federal government to be liable for fee awards.
 
 B
 
 38
 Both the majority in its opinion and the Government in its briefs have studiously avoided any mention of the hearings on the legislation that became Section 1988. This is unfortunate because the report of these hearings shows that even the Department of Justice, represented by Rex E. Lee, Assistant Attorney General for the Civil Division, recognized that the legislation before the House Subcommittee would authorize fee awards against the federal government. In his testimony In support of the legislation, Mr. Lee said:
 
 
 39
 H.R. 8220 would authorize the awarding of attorneys' fees to a prevailing plaintiff in actions brought under certain civil rights statutes. Actions under the statutes involved have been brought against both federal officers and private individuals.
 
 
 40
 H.R. 9552 authorizes the awarding of attorneys' fees as a matter of discretion in certain civil rights litigation. The prevailing party, other than the United States, may recover attorneys' fees.
 
 
 41
 Thus, H.R. 9552 applies to All plaintiffs or defendants except to the United States to the extent that it is a prevailing party.
 
 
 42
 Awarding of Attorneys' Fees, Hearings Before the House Judiciary Subcommittee on Courts, Civil Liberties, and the Administration of Justice, 94th Cong., 1st Sess. 176-177 (1975) (emphasis added) (hereinafter "House Hearings").[16] Equally revealing is the statement by Congressman Drinan. In introducing H.R. 9552 and several other attorneys' fees provisions he told the Subcommittee that:
 
 
 43
 (U)nder these bills the Federal government could never recover its attorney fees. On the other hand, it would be required to pay the counsel fees of a private prevailing party, which is prohibited generally by current law (see 28 U.S.C. 2412). These bills, if enacted, would be exceptions to the general prohibition in 28 U.S.C. 2412. That section need not be amended, however, since it now states: "Except as otherwise specifically provided by statute. . . ."
 
 
 44
 House Hearings at 53 (emphasis added). H.R. 9552 became the House version of the legislation that was enacted as Section 1988. The language of H.R. 9552 was virtually identical to Section 1988 as it passed Congress.[17] To be sure, courts are generally wary of testimony before committee hearings as aids to statutory construction. See S&E Contractors, Inc. v. United States, 406 U.S. 1, 13 n.9, 92 S.Ct. 1411, 1418-1419 n.9, 31 L.Ed.2d 658 (1972). However, courts are willing to attach great weight to such testimony when it consists of "precise analyses of statutory phrases by the sponsors of the proposed laws." Id. Congressman Drinan introduced H.R. 9552 to the House Judiciary Subcommittee and was the chief sponsor of Section 1988 in the House. Both the House Report and the floor debates referred to Mr. Lee as a principal source of interpretation for Section 1988.[18]
 
 C
 
 45
 Much of the Government's purported support for its claim that Section 1988 does not authorize awards against the United States derives from the floor debates. However, fairly considered the debates offer the Government little support. Rather, they support the conclusion that Congress intended Section 1988 to apply to the United States.
 
 1. The Senate Debates
 
 46
 In his remarks in support of the bill Senator Hugh Scott, who opened the debate on S. 2278, explained that its enactment would "assure that attorney's fees will be available in suits brought under the reconstruction-era civil rights laws, * * * In the same fashion and to the same extent as the statutes presently provide in cases brought under title VII of the 1964 Civil Rights Act." 122 Cong.Rec. S16251 (daily ed. Sept. 21, 1976) (emphasis added). Since the United States is liable for attorneys' fees in Title VII cases, the natural inference from this is that fees may be awarded against the United States under Section 1988.
 
 
 47
 The Government relies on an amendment offered by Senator Helms, an opponent of the bill, which purportedly shows that he understood the bill not to apply to the United States. However, a closer examination of the Helms amendment shows that Senator Helms misunderstood the import of the phrase "other than the United States." Section 1988 authorizes the award of fees to "the prevailing party, other than the United States * * *." The amendment would have inserted the phrase "or any State * * * or any political subdivision thereof" after the latter phrase. 122 Cong.Rec. S16433 (daily ed. Sept. 22, 1976). But the effect of this addition would have been to deny Both the United States And state and local governments the right to recover attorneys' fees if they were prevailing parties. On the other hand, it is significant that Senator Allen, a principal opponent of the bill,[19] understood it to permit awards against the federal government. He unsuccessfully sponsored an amendment that would have limited the liability of the United States to situations in which an official of the federal government "has acted in a contumacious or vexatious manner." 122 Cong.Rec. S16567 (daily ed. Sept. 24, 1976).[20]
 
 2. The House Debates
 
 48
 The majority acknowledges that there is support in the report of the floor debates in the House for the conclusion that Section 1988 applies to the United States. In the only portion of the House debates that directly addressed the question of the liability of the United States under Section 1988, Congressman Railsback, the ranking Republican on the House Judiciary Subcommittee which drafted the House version of the legislation that became Section 1988 and a strong supporter of the bill, made it quite clear that it applied to the United States. The colloquy between Mr. Railsback and Mr. Quie is very revealing.
 
 
 49
 Mr. Quie. * * *
 
 
 50
 I would like to ask the minority member, the gentleman from Illinois (Mr. Railsback), a question. * * *
 
 
 51
 First, I would like to ask if the U. S. Government is the plaintiff in a civil rights case against an individual or corporation, can that individual or corporation as the prevailing party be awarded attorney's fees against the U. S. Government?
 
 
 52
 Mr. Railsback. * * * (A)s I read the bill before us, my answer would be yes. What we do is limit the United States from recovering But we do not limit the rights of other prevailing parties to recover in the event the United States would be the plaintiff in an action such as described in the bill.
 
 
 53
 122 Cong.Rec. H12163 (daily ed. Oct. 1, 1976) (emphasis added). Mr. Railsback further explained:
 
 
 54
 (A)s I read the bill before us, we limit the right of the U. S. Government to recover, We do not limit in a case where the United States would be the plaintiff suing a defendant, we do not limit the defendant's right to recover. Where the judge might decide that a prevailing defendant should recover, We do not limit the defendant from recovering from the United States in civil rights cases.
 
 
 55
 Id. at 12163-12164 (emphasis added).[21] Another colloquy between Congressman Railsback and Congressman Quie is also quite plain in its implications.
 
 
 56
 Mr. Quie. * * * (I)f the United States is the plaintiff and loses a civil rights case against a school district or college, can that school district or college as the prevailing party be awarded attorneys fees against the U. S. Government?
 
 
 57
 Mr. Railsback. * * * (A)gain it would be in the discretion of the court and Nowhere in the bill do we prevent a school district or college from recovering reasonable attorneys fees, even in a case where the United States is a party plaintiff.
 
 
 58
 Id. at 12164 (emphasis added). This is the type of "precise analyses of statutory phrases by the sponsors of proposed laws" which courts give significant weight. S&E Contractors, Inc. v. United States, supra, 406 U.S. at 13 n.9, 92 S.Ct. at 1418, 1419 n.9. I am at a loss to understand how the majority can maintain, in the face of evidence of this sort, that the legislative history of the Act does not clearly show that Congress intended Section 1988 to apply to the United States.[22]V
 
 
 59
 Only "prevailing parties" may be awarded attorneys' fees under Section 1988. The Government concedes that appellees in Andrulis v. United States, No. 78-2039, are prevailing parties. But it challenges the District Court's ruling that appellees in NAACP v. Civiletti, No. 78-1639, are prevailing parties. The majority does not reach this issue since it finds that Section 1988 does not apply to the federal government. Because I find Section 1988 applicable to the United States, I will briefly examine the Government's claim.
 
 
 60
 The case arose out of the fatal shooting of Carnell Russ, a black man, by a white Arkansas law enforcement officer while Russ was detained for an alleged traffic violation. The officer was tried for manslaughter and acquitted by a state court jury. The Justice Department reviewed the transcript of the trial and FBI reports and decided against prosecuting the officer under the federal criminal civil rights statute, 18 U.S.C. § 242 (1976).
 
 
 61
 Subsequently, the Russ family and the NAACP brought suit under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1985 (1976), challenging the adequacy of the federal investigation and the decision not to prosecute. The nub of their claim was that the Justice Department illegally deferred to the state proceedings pursuant to a policy, established in 1959 by then Attorney General Rogers, of not initiating a federal prosecution after a state prosecution for the same act, unless there were compelling reasons. Plaintiffs sought both damages and injunctive relief.[23]
 
 
 62
 While this suit was pending, then Attorney General Bell issued in February 1977 a memorandum modifying the 1959 policy against dual prosecutions. He announced a new policy of evaluating "each and every allegation of a violation of the civil rights laws * * * on its own merits," without regard to related state enforcement action. Joint Appendix (JA) 277. Both parties agreed that the Bell memorandum effectively mooted the lawsuit, and they filed a joint motion to dismiss. In granting the motion the District Court agreed with the parties that the Bell memorandum was in accord "with the policy objectives which underlie this lawsuit * * *." JA 279, 282-283. Plaintiffs subsequently filed a motion for and were awarded attorneys' fees under 42 U.S.C. § 1988 (1976).
 
 
 63
 The award of attorneys' fees under Section 1988 is left to the discretion of the court. As such the District Court's judgment should be reversed only for an abuse of discretion. Morrow v. Dillard, 580 F.2d 1284, 1300 (5th Cir. 1978); Sandford v. R. L. Coleman Realty Co., 573 F.2d 173, 179 (4th Cir. 1978). The District Court properly identified the test for a prevailing party as "whether that party has accomplished the objectives of his litigation. Parker v. Matthews, 411 F.Supp. 1059, 1064 (D.D.C. 1976), Aff'd sub nom. Parker v. Califano, [182 U.S.App.D.C. 322], 561 F.2d 320 (D.C. Cir. 1977)." JA 283.[24] The District Court found that the plaintiffs' "persistent prosecution of this action was a strong catalytic factor in the issuance of the Bell memorandum." JA 284. It also found that the plaintiffs had achieved the policy objective set out in their second amended complaint publicizing and correcting the Justice Department's policy of deferring to prior state civil rights prosecutions. Id.
 
 
 64
 To be sure, fathoming the Attorney General's motives is not the easiest of tasks. Nevertheless, I conclude, after a careful review of the record, that the District Court did not abuse its discretion in awarding attorneys' fees to appellees as "prevailing parties."
 
 VI
 
 65
 The attorneys' fees provisions of the civil rights statutes were enacted "to encourage individuals injured by racial discrimination to seek judicial relief * * *." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Courts construing these attorneys' fees provisions must strive to further this goal. The decision by the majority of this court will defeat Congress' purpose in enacting Section 1988 insofar as suits against the federal government are concerned. An examination of the purposes, language, and legislative history of Section 1988 provides ample support for the conclusion that Congress intended to authorize attorneys' fees awards against the United States under the Act.
 
 
 66
 I respectfully dissent.
 
 
 
 *
 The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation pursuant to 28 U.S.C. § 292(d)
 
 
 [1]
 The United States District Court for the District of Columbia, the Honorable Gerhard A. Gesell presiding
 
 
 [2]
 The United States District Court for the District of Columbia, the Honorable Barrington Parker presiding
 
 
 [3]
 28 U.S.C. § 2412 as presently drafted provides:
 "Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. . . ."
 Prior to 1966, neither attorney's fees nor costs were recoverable against the United States unless such liability was expressly provided for by act of Congress. In 1966, 28 U.S.C. § 2412 was amended to permit the recovery of costs unless specifically forbidden by statute. Congress, however, explicitly excluded "the fees and expenses of attorneys" from the costs recoverable under § 2412 as a matter of course. Thus, with respect to attorney's fees, § 2412 remains an explicit assertion of sovereign immunity. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 267-68, 95 S.Ct. 1612, 1626, 44 L.Ed.2d 141 (1975) ("But § 2412 on its face, and in light of its legislative history, generally bars such awards, which, if allowable at all, must be expressly provided for by statute . . . .")
 
 
 [4]
 Other civil rights statutes contain similar language. See, e. g., 42 U.S.C. §§ 2000b-1, 2000e-5(k). In addition, a number of noncivil rights statutes explicitly provide for fee awards against the United States. See e. g., 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 15 U.S.C. § 2059(e) (Consumer Product Safety Act)
 
 
 [5]
 Section 304(d) provided:
 "The Court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. . . ."
 
 
 [6]
 In its entirety, this portion of 42 U.S.C. § 1988 reads as follows:
 "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of (the Education Amendment of 1972), or in any civil action or proceeding, by or on behalf of the United States of America to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
 
 
 [7]
 See, e. g., 42 U.S.C. § 2000a-3(b) quoted Supra and statutes cited at note 4 Supra
 
 
 [8]
 See H.Rep. No. 94-1558, 94th Cong., 2d Sess. at 2 (1976); S.Rep. No. 94-1011, 94th Cong., 2d Sess. at 1 (1976), U.S.Code Cong. & Admin.News, p. 5908
 
 
 [9]
 Actions under the Reconstruction Era Civil Rights statutes are generally brought by individuals against other individuals or against state or local governments. See Hutto v. Finney, supra, 98 S.Ct. at 2575. On their face, these statutes contain no waiver of federal sovereign immunity nor do they appear to create a cause of action against the United States as an entity. With respect to Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, at the time the Awards Act was passed Congress was uncertain whether a private action could even be brought under these statutes. Since that time, the Supreme Court has ruled that private causes of action are cognizable under Title IX. Cannon v. University of Chicago, --- U.S. ----, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)
 
 
 [10]
 See discussion note 3 Supra
 
 
 [11]
 Thus, for example, Congressman Railsback, the ranking Republican on the House Judiciary Committee which drafted the Awards Act, seemed to suggest that attorney's fees might be recoverable against the United States when, in response to a question, he said:
 "Mr. Speaker, if the gentleman will yield further, again it would be in the discretion of the court and nowhere in the bill do we prevent a school district or college from recovering reasonable attorneys fees, even in a case where the United States is a party plaintiff." 121 Cong.Rec.H. 12164 (daily ed., October 1, 1976).
 However, a contrary stance appears to have been taken by Congressman Rodino, the Chairman of the House Judiciary Committee, in his response to a request from Senator Kennedy for comments on an amendment offered by Senator Goldwater which would have subjected the United States to broad liability for attorney's fees in tax cases:
 "I fear that Senator Goldwater's amendment . . . will jeopardize the Civil Rights Attorney's Fees Awards Act of 1976. S. 2278 presently is a very narrow bill. . . . It does not involve federal spending. . . . The Committee is presently studying other bills, like Senator Goldwater's, which would go far beyond the 'American Rule' or the 'private attorney general' exception to it, and which may allow recovery against the Federal Government. We hope to take action next Congress on such bills." 122 Cong.Rec.S. 16490 (daily ed., Sept. 23, 1976).
 
 
 [12]
 Appellees in the Andrulis case offer two additional theories under which they submit the award of attorney's fees in their case might be sustained. We find neither of these theories persuasive. Appellees rely first on the language of § 2(5)(b) of the Small Business Act, 15 U.S.C. § 634(b) which provides that the Administrator of the SBA may "sue and be sued . . . in any United States district court . . . ." Appellees submit that the "sue and be sued" clause, which places the SBA on a par with private parties for purposes of federal court litigation, Mar v. Kleppe, 520 F.2d 867, 870 (10th Cir. 1975), constitutes an "express statutory consent" satisfying the requirements of 28 U.S.C. § 2412
 We acknowledge that through the "sue and be sued" clause Congress has provided a limited waiver of the sovereign immunity generally afforded agencies of the federal government. However, it is well established that Congress in waiving governmental immunity has the power to waive immunity entirely or to waive it for some purposes and retain it for others. See Federal Housing Administration Region No. 4 v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 84 L.Ed. 724 (1939), and cases cited therein. Congress made no mention of attorney's fees in permitting the Administrator of the SBA to "sue and be sued." Moreover, the clause was enacted at a time when, under the "American Rule," the payment of attorney's fees would not have been regarded as an ordinary incident of litigation. Thus it seems logical to assume that in subjecting the SBA to suit Congress did not expect the government to be liable for attorney's fees. In any event, because § 2(5)(b) of the Small Business Act neither directly nor expressly authorizes an award of fees, it appears inadequate on its face to override the general bar of 28 U.S.C. § 2412. See Cassata v. Federal Savings and Loan Insurance Corp., 445 F.2d 122 (7th Cir. 1971) (Section 2412 held to preclude the recovery of attorney's fees from the FSLIC which, like the SBA, is a "sue and be sued" agency, See 12 U.S.C. § 1725(c)(4)).
 In the alternative, appellees contend that an amendment to the Administrative Procedure Act (APA) enacted contemporaneously with the Awards Act contains an express waiver of sovereign immunity sufficient to sustain an award of fees in the instant case. The APA amendment provides:
 "An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . ." 5 U.S.C. § 702.
 Appellees submit that § 702 expressly waives sovereign immunity for relief against the United States, except for money damages, and the Awards Act provides a type of relief, attorney's fees, which the Supreme Court has concluded do not constitute money damages. Hutto v. Finney, supra, 98 S.Ct. at 2576, n.24. Together, appellees claim, these statutes combine to expressly authorize the award of fees against the United States.
 While imaginative, appellees' argument is unconvincing. The legislative history surrounding passage of the APA amendment suggests that Congress sought by the amendment to achieve the narrow purpose of withdrawing the defense of sovereign immunity in actions against federal agencies in which "specific relief" such as "an injunction, declaratory judgment, or writ of mandamus" not requiring any federal expenditure was sought. H.Rep. No. 94-1656, 94th Cong., 2d Sess. at 4-5 (1976). The amendment says nothing about the recovery of attorney's fees ancillary to such an action and, indeed, the amendment itself provides that "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Section 2412 forbids the award of attorney's fees against the United States absent express statutory authorization. We do not view the APA amendment as satisfying or modifying in any way that requirement.
 
 
 [13]
 In this regard, the Committee Report accompanying the Senate version of the Act notes as particularly apt a Supreme Court opinion containing the following quotation of former Justice Tom Clark in a suit brought under the Landrum-Griffin Act:
 "Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose. . . . Without counsel fees the grant of federal jurisdiction is but a gesture . . . . Hall v. Cole, 412 U.S. 1 (93 S.Ct. 1943, 36 L.Ed.2d 702) (1973), quoting 462 F.2d 777, 780-81 (2d Cir. 1972)." S.Rep. No. 94-1011, 94th Cong., 2d Sess. at 3 (1976).
 The same comment might appropriately be made with respect to enforcement of the rights afforded under the civil rights statutes as applied to the federal government.
 
 
 [1]
 42 U.S.C. § 1988 (1976) provides in relevant part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 (20 U.S.C. § 1681 et seq.), or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 (Brackets in original.) NAACP v. Civiletti, No. 78-1639, was brought under, Inter alia, 42 U.S.C. §§ 1981, 1985 (1976). Andrulis v. United States, No. 78-2039, alleged discrimination in violation, Inter alia, of 42 U.S.C. §§ 1981, 1985 (1976).
 
 
 [2]
 Appellees in Andrulis v. United States, No. 78-2039, suggest two additional theories on which the award of attorneys' fees in that case might be sustained. See majority opinion, 197 U.S.App.D.C., at --- n.12, 609 F.2d 197. Because I conclude that § 1988 authorizes awards against the federal government, I do not reach these alternative arguments
 
 
 [3]
 In this particular context this doctrine is reiterated in 28 U.S.C. § 2412 (1976), which proscribes fee awards against the United States except where specifically provided for by statute. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257-259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Section 2412 states:
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys(,) may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. * * *
 
 
 [4]
 Title II of the Civil Rights Act of 1964 provides:
 In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person.
 42 U.S.C. § 2000a-3(b) (1976).
 
 
 [5]
 See, e.g., Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.) (three-judge court), Aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972); Stanford Daily v. Zurcher, 366 F.Supp. 18 (N.D.Cal.1973), Aff'd, 550 F.2d 464 (9th Cir. 1977), Rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)
 
 
 [6]
 Senator Kennedy said in the Senate:
 It is a fundamental axiom of law that where there is a right the law should provide a remedy. Yet, without a provision to permit awards of attorneys' fees to successful parties, the rights secured by those civil rights laws covered by this act are hollow rights indeed. Enactment of this legislation would do much to assure all the citizens of this Nation that the words "equal protection of law" mean what they say, and that Congress firmly intends that all our civil rights laws be vigorously enforced.
 
 
 [122]
 Cong.Rec. S16252 (daily ed. Sept. 21, 1976). Congressman Drinan remarked in the House:
 If Federal laws providing for the protection of civil constitutional rights are to be fully enforced, Congress must provide effective remedies for the vindication of those guarantees. Authorizing the award of reasonable counsel fees is an important tool for effectuating that purpose.
 
 
 [122]
 Cong. Rec. H12160 (daily ed. Oct. 1, 1976)
 
 
 [7]
 S.Rep. No. 94-1011, 94th Cong., 2d Sess. 2 (1976); H.R.Rep. No. 94-1558, 94th Cong., 2d Sess. 1 (1976)
 
 
 [8]
 Parker v. Califano, 182 U.S.App.D.C. 322, 333, 561 F.2d 320, 331 ( 1977)
 
 
 [9]
 Courts have construed civil rights attorneys' fees provisions very broadly in order to further Congress' purposes. Thus the Supreme Court held in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), that notwithstanding the statutory language that the District Court "in its discretion" may award costs to the prevailing party, the purpose of encouraging private enforcement dictates that a prevailing party should recover attorneys' fees "unless special circumstances would render such an award unjust." Id. at 402, 88 S.Ct. at 966. In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), the court observed: "This Court, as part of its obligation 'to make sure that Title VII works,' has liberally applied the attorney's fees provision of Title VII, recognizing the importance of private enforcement of civil rights legislation." Id. at 716 (footnote omitted) (Quoting Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891 n.3 (5th Cir. 1970))
 
 
 [10]
 Section 1988 authorizes fee awards to the prevailing party in "any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, * * * the * * * Internal Revenue Code * * *." The Government argues that this is the only specific waiver in § 1988, and that the failure to mention the United States in the civil rights portion of § 1988 as well shows that the "any action" reference does not apply to the United States
 This argument is unpersuasive. The IRS section was an amendment to the original bill sponsored by Senator Allen. It was accepted by the bill's sponsors as a compromise to end a filibuster of the bill led by Senator Allen. The purpose of the Allen amendment was to provide relief to taxpayers who are being harassed by the Government.
 We know all too well the proclivity of the IRS to harass taxpayers * * *. (I) f the Government harasses a taxpayer, * * * then the Government should be required to pay that attorney fee.
 
 
 [122]
 Cong.Rec. S16428 (daily ed. Sept. 22, 1976) (remarks of Sen. Allen). Since the Allen amendment only authorizes fee awards in certain actions Brought by the IRS, it could not have used the term "any action" or "any action under the Internal Revenue Code." Hence, by mentioning the United States specifically in the IRS portion of § 1988 Congress merely intended to make it plain that § 1988 does not apply to all tax cases. On the other hand, in enacting the civil rights fee provision "Congress firmly intend(ed) that All our civil rights laws be vigorously enforced." 122 Cong.Rec. S16252 (daily ed. Sept. 21, 1976) (remarks of Sen. Kennedy) (emphasis added)
 Indeed, a straightforward reading of the statute suggests the exact opposite of the Government's contention. The phrase "any action or proceeding" is used twice in the statute. The natural inference is that the phrase has the same meaning and coverage in the two uses (this explains why the limiting language "by or on behalf of the United States of America" was necessary). Since the phrase unmistakably encompasses awards against the United States in the IRS context, it is reasonable to assume that the same holds for the civil rights use.
 
 
 [11]
 Section 304(d) provides:
 The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. * * *
 42 U.S.C. § 7604(d) (Supp. I 1977).
 
 
 [12]
 42 U.S.C. § 7607(f) (Supp. I 1977) states:
 In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.
 
 
 [13]
 Section 505(b) provides:
 In any action or proceeding to enforce or charge a violation of a provision of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [14]
 Senator Cranston, in introducing the attorneys' fees provision, said:
 Mr. President, the rights extended to handicapped individuals under title V of the Rehabilitation Act of 1973 Federal Government employment, physical accessibility in public buildings, employment under Federal contracts, and non-discrimination under Federal grants are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance. Pri(va)te enforcement of these title V rights is an important and necessary aspect of assuring that these rights are vindicated and enforcement is uniform. The availability of attorneys' fees should assist substantially in this respect. * * *
 
 
 [124]
 Cong.Rec. S15590 (daily ed. Sept. 20, 1978). See also S.Rep. No. 95-890, 95th Cong., 2d Sess. 19 (1978)
 
 
 [15]
 The inference that the omission was deliberate and significant would have been more plausible if the same Congress had drafted the two statutes, or if in place of the "any party" language the fee provisions listed the parties covered, and the United States was included in one list but not in the other
 
 
 [16]
 Mr. Lee went on:
 (The Department of Justice expresses) support in principle for H.R. 8220 and H.R. 9552, awarding of attorneys' fees to a prevailing party in civil rights actions under the revised statutes (sections 1981, 1982, and 1983, 1985, and 1986, of title 42, United States Code).
 Awarding of Attorneys' Fees, Hearings Before the House Judiciary Subcommittee on Courts, Civil Liberties, and the Administration of Justice, 94th Cong., 1st Sess. 179 (1975) (hereinafter "House Hearings"). H.R. 8220 and H.R. 9552 differed from each other only in that the former made the award of attorneys' fees mandatory whereas the latter made it discretionary. Mr. Lee favored discretionary awards and also had reservations about fee awards in every § 1983 case. Thus he supported the bills "in principle." See House Hearings at 176-180.
 
 
 [17]
 H.R. 9552 provided:
 In any action to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney fees as part of the costs.
 House Hearings, Supra note 16, at 244. This bill was approved by the House Judiciary Subcommittee with a technical amendment which conformed it to the Senate version, S. 2278, which at the time had cleared the Senate Judiciary Committee and was awaiting action by the full Senate. H.R. 9552 was subsequently approved by the House Judiciary Committee with an amendment that added title IX of Public Law No. 92-318 to the statutes covered by the bill. A clean bill, H.R. 15460, was then reported to the full House. Other than the addition of title IX the only differences between H.R. 9552 and H.R. 15460 (the clean bill) were technical changes, not affecting the substance, made on the advice of the House Parliamentarian and staff and legislative counsel. See H.R. Rep. No. 94-1558, Supra note 7, at 3-4 & n.4. Time pressures made it necessary for the House to adopt the Senate version, S. 2278, in place of H.R. 15460. However, the two bills were nearly identical.
 
 
 [18]
 See, e.g., H.R.Rep. No. 94-1558, Supra note 7, at 6; 122 Cong.Rec. H12162 (daily ed. Oct. 1, 1976) (remarks of Rep. Kastenmeier)
 
 
 [19]
 Senator Allen led a filibuster against the bill which he ended only when the bill's sponsors compromised by accepting an amendment that he proposed. See 122 Cong.Rec. S17050 (daily ed. Sept. 29, 1976); note 10 Supra
 
 
 [20]
 The Government points to a Congressional Budget Office (CBO) "estimate" (See S.Rep. No. 94-1011, Supra note 7, at 7; H.R.Rep. No. 94-1558, Supra note 7, at 10) that enactment of the bill would result in no additional costs to the Government. This "no cost" feature of the bill was referred to in the floor debates. A few points are worth noting in assessing the significance of this "no additional costs" estimate. First, it appears that attorneys' fees awards against the Government are paid from the Department's existing appropriations. Mr. Lee confirmed this in his testimony before the House Judiciary Subcommittee. He said:
 (A)ttorneys' fees awards * * * necessarily Reduce available resources, with concommitant impact on other Government programs.
 House Hearings, Supra note 16, at 178 (emphasis added). Thus the CBO did not foresee any additional costs (I.e., new appropriations) to the Government. Second, it is significant that although the United States is liable for attorneys' fees under other civil rights statutes passed prior to § 1988, and is liable under § 1988 to prevailing defendants in some internal revenue cases, there is no line item in the Justice Department's appropriations for such payments. These payments are apparently made from a general fund for "expenses necessary for the legal activities of the Department of Justice * * *." Pub.L. No. 95-431, 92 Stat. 1026. Third, it would have been incongruous for CBO or Congress to "estimate" the expenditures required to compensate individuals for the federal government's abridgement of civil rights laws. Finally, the amounts involved are likely to be minimal unless one assumes wholesale violations of civil rights laws by federal government agencies or officials. In light of all these factors, and given the other indications that Congress intended § 1988 to apply to the United States, it is reasonable to conclude that the CBO "estimate" is not incompatible with the conclusion that § 1988 authorizes awards against the federal government.
 Much the same explanation can be given to a letter written by Congressman Rodino, Chairman of the House Judiciary Committee, introduced during the Senate debate on a proposed amendment to S. 2278 that would have subjected the United States to broad liability for tax cases. In the letter Mr. Rodino expressed concern that the amendment could jeopardize Administration support for the bill and weaken its chances for enactment. He said:
 I fear that Senator Goldwater's amendment lacking a careful analysis by the Administration, and in light of the Administration's prior position on another IRS attorney fee provision will jeopardize the * * * Act * * *. S. 2278 is presently a very narrow bill intended to enable private enforcement of civil rights acts. It does not involve federal spending, and has specifically been supported by the Administration at a hearing before (a) House Subcommittee * * *.
 The Committee is presently studying other bills, like Senator Goldwater's, which would go far beyond the "American Rule," or the "private attorney general" exception to it, and which may allow recovery against the Federal Government. We hope to take action next Congress on such bills. However, I fear that quick action on the Goldwater amendment, which goes far beyond the narrow provisions of S. (2)278, would defeat the bill.
 
 
 [122]
 Cong.Rec. S16490 (daily ed. Sept. 23, 1976). The majority cites this letter as evidence that some members of Congress did not think that S. 2278 applied to the United States. Majority opinion, 197 U.S.App.D.C. at --- n.11, 609 F.2d at 519 n. 11. While it is possible to interpret Mr. Rodino's letter in this manner, it is equally plausible that it merely reflects his expectation that the federal government will not often be guilty of violating civil rights laws and, hence, fee awards against the United States will be minimal. In this regard it is significant that Congressman Rodino did not challenge Congressman Railsback's statement, made in the House at a time when the debate specifically focused on the question of the liability of the United States, that § 1988 allows recovery of attorneys' fees from the federal government. See text at notes 21-22 Infra. Congressman Rodino's real concern was with the broad scope of the proposed amendment its possible impact on Administration support and therefore on the bill's chances for enactment not the question whether § 1988 allows recovery against the federal government
 
 
 [21]
 The Government attempts to explain Congressman Railsback's statement as due to confusion caused by the House's "eleventh hour" consideration of the bill. In addition, it suggests that this statement was immediately refuted by Congressman Drinan, the bill's sponsor, when the latter remarked:
 (It) is very clearly limited. If a Federal judge came to that conclusion it would indeed be a most unusual case. This provision was inserted into the Senate bill. It did not originate with the House Judiciary Committee. It does give a remedy for the most extraordinary case where the defense could assert and prove to a Federal judge that an IRS case brought against him was so vexatious and so without merit that he should get compensation.
 Id. at 12164. However, it seems that if there was any confusion it was on the part of Congressman Drinan. He apparently thought that Congressman Railsback was referring to the amendment to the bill, adopted in the Senate, which made the United States liable to prevailing defendants in certain tax cases. See note 10 Supra. Congressman Railsback was not in fact referring to this provision. When Congressman Railsback reiterated his understanding that the bill authorized awards against the United States, his statement was not challenged by Congressman Rodino who shared the view that the Act allowed awards against the federal government. See text at notes 17-18 Supra.
 
 
 [22]
 The Government relies on, and the majority cites with approval, court decisions that have held that § 1988 does not apply to the United States, Shannon v. HUD, 433 F.Supp. 249 (E.D.Pa.1977), Aff'd per curiam, 577 F.2d 854 (3d Cir.), Cert. denied, 439 U.S. 1000, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978); Southeast Legal Defense Group (SLDG) v. Adams, 436 F.Supp. 891 (D.Or.1977). The District Courts that decided the Shannon and SLDG cases did not have the benefit of the Supreme Court's comment in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), about the broad reach of § 1988. The Third Circuit in its brief Per curiam did not address this point. Moreover, these courts appear to have been under the mistaken impression that the only attorneys' fees provisions that have been applied to the United States are those that specifically mention the United States by name. But as the majority of this court points out, an intention to authorize such awards may be inferred by "necessary implication" from the context in which a fee provision is found. See text at notes 11-14 Supra ; majority opinion, 197 U.S.App.D.C. at ---, 609 F.2d at 516. Finally, the SLDG court misconstrued § 1988's legislative history (the Third Circuit's Per curiam opinion in Shannon cited SLDG with approval, 577 F.2d at 856). The SLDG court noted that the Senate rejected an amendment offered by Senator Helms which would have made the United States liable for attorneys' fees to prevailing parties in every civil case and to acquitted criminal defendants. It concluded from this that Congress declined the opportunity to authorize fee awards in civil rights cases under § 1988. 436 F.Supp. at 893. This conclusion is erroneous. Senator Helms was an opponent of the bill and his aim in offering the amendment was to lessen the bill's chances for enactment by broadening the Government's scope of liability. The Administration for one was opposed to such broad liability. See House Hearings, Supra note 16, at 177-182 (testimony of Mr. Lee). The fact that Congress declined to enact such a broad attorneys' fees provision can in no way be interpreted as a rejection of the Government's liability under the more limited legislation being considered
 
 
 [23]
 The District Court characterized the primary objective of plaintiffs' claim as "ensur(ing) that the * * * Department of Justice (does) not fail to vindicate federally protected interests by not prosecuting local law enforcement officers alleged to have violated federal criminal civil rights statutes simply because state or local authorities had already prosecuted those officers for state or local offenses arising from the same conduct." Joint Appendix (JA) 279
 
 
 [24]
 It is plain from the legislative history of § 1988 that a litigant may be a prevailing party even though the lawsuit was not prosecuted to a full trial on the merits. See S.Rep. No. 94-1011, Supra note 7, at 5; H.R.Rep. No. 94-1558, Supra note 7, at 7