**Allen S. BERMAN, Plaintiff-Appellee,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellant.**

No. 82–1621.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1982.

Decided July 27, 1983.

John Cordes, Atty., Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Jonathan B. Newcomb, Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, COFFEY and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

This appeal by the Secretary of Health and Human Services requires us to resolve,

* Of the Second Circuit, by designation.

at least within this Circuit, a dispute as to whether attorneys' fees granted in a Social Security case to the prevailing party under the Equal Access to Justice Act (EAJA or Act), Pub.L. No. 96–481, 94 Stat. 2325 (1980), retroactively applies to attorneys' fees for work performed prior to the effective date of the Act. The Secretary appeals solely to challenge the district court's ruling which allowed a retroactive award of attorneys' fees. We hold that the EAJA does apply to attorneys' fees for work performed prior to the effective date of the Act and that any other interpretation would require us improperly to restrict the application of the Act. We affirm.

I.

The instant proceeding stems from the difficulty encountered by appellee Berman in obtaining earnings record credit for his work as an historical markers supervisor for the Illinois Department of Transportation (Department) from November 1974 through May 1975. Under the terms of his contract with the Department, Berman served as a consultant. He advised the Department whether it should approve requests for the erection of historical markers. He received $6,920 for his work. This was paid in eight monthly installments.[1] Despite his having been compensated by the state, the Social Security Administration (SSA or Administration) refused to credit for earnings record purposes his service as the Department's historical markers supervisor. His appeal to an Administrative Law Judge (ALJ) was unsuccessful. The ALJ conclud-

ed that Berman was a contractual services employee of Illinois during the period he worked for the Department and that this category of employment was not covered by the relevant provisions of the Social Security Act. Subsequently, the Appeals Council upheld the ALJ's decision and it became the final decision of the Secretary.

Berman then commenced the instant action *pro se* in the United States District Court for the Northern District of Illinois, challenging the adverse administrative ruling. The case was assigned to Judge Prentice H. Marshall. On October 16, 1980, Judge Marshall appointed Lawrence P. Bemis, Esq., of the firm of Kirkland & Ellis, as counsel for Berman.[2] In his letter of appointment, Judge Marshall indicated that Berman was willing to pay the Administration "a substantial sum of money in order to straighten out his record." The judge stressed to Bemis that "this case will not produce a fund from which you could be compensated and there is no provision under the Social Security Act for an award of attorney's fees." Soon thereafter, on October 21, 1980, Congress enacted the EAJA, which provided for the awarding of attorneys' fees to prevailing parties in certain adversary adjudications and civil actions against the United States.[3] Consequently, at the time of his appointment of Bemis, Judge Marshall correctly informed him that there was no statutory provision for compensating him. In short, there would be no departure from the general American rule

1. Under his contract, the Department referred all requests for the erection of historical markers to Berman for investigation, research and recommendation. Berman then submitted monthly vouchers and written progress reports to the Department *before* being compensated. This was a different procedure from that used to compensate state employees. Each voucher stated in part that Berman's work was as "a consultant in charge of [the] historical markers program." No taxes were withheld from Berman's state checks. Consequently, he filed his tax returns as a self-employed person and paid FICA taxes himself.

2. Berman was represented by counsel during the administrative proceedings; however, this

prior representation apparently terminated after the Appeals Council notified Berman in a letter dated April 21, 1980 that it had upheld the ALJ's decision.

3. *See* EAJA, Pub.L. No. 96–481, 94 Stat. 2325 (1980). The EAJA amended existing statutes that had limited courts and agencies in granting fees in cases involving the United States. *See* 5 U.S.C. § 504 (Supp. IV 1980) (establishing procedure whereby administrative agency shall award costs and fees to prevailing party other than the United States in an adversary adjudication); 28 U.S.C. § 2412 (Supp. IV 1980) (waiving government's sovereign immunity with respect to fees in civil actions unless expressly prohibited by statute).

regarding attorneys' fees.[4] The Social Security Act, which then was the relevant statute, provided only for a limited statutory exception to the general American rule in cases involving the award of past-due benefits. 42 U.S.C. § 406(b)(1) (1976) (providing for grant of attorneys' fees out of amount of past-due benefits).

After the appointment of Bemis as counsel for Berman, both parties moved for summary judgment. In a memorandum order dated August 14, 1981, Judge Marshall held that the ALJ erroneously had concluded that Berman was a contractual services employee of the state. The judge observed that this type of position was not even created until July 1, 1975, after Berman had completed his services for the Department.[5] The judge also rejected the ALJ's application of the relevant sections of the Social Security Act to the instant action.[6] Judge Marshall therefore reversed the decision of the Secretary and remanded the action to the Secretary with instructions to grant Berman four quarters of Social Security coverage for 1975.[7]

After prevailing on the summary judgment motion, Berman applied for attorneys' fees. In an opinion dated February 16, 1982, 531 F.Supp. 1149 (granting fee application), the district court at the outset held that the instant action was pending on October 1, 1981, the effective date of the

4. For a history of the origins and development of the American rule, see *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247–57 (1975). As discussed *infra,* the EAJA was a deliberate attempt by Congress to suspend the American rule in specific circumstances involving litigation with the United States. Congress concluded that, although the purpose of the American rule was that a losing party should not be penalized for prosecuting or defending an action, and thus that litigation should not be deterred, the American rule was having the opposite effect in cases involving the United States. H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 9, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4988. Congress was concerned that individuals would absorb the cost of complying with an erroneous government order rather than contesting it when litigation expenses exceeded the amount at stake. H.R.Rep. No. 1418, *supra,* at 9.

5. As discussed in note 6 *infra,* a contractual services employee is excluded from coverage under the relevant section of the Social Security Act. Consequently, the ALJ recognized that his finding that Berman was generically an employee of the State of Illinois *per se* compelled the conclusion that Berman's work during 1974 and 1975 was not entitled to earnings record credit.

6. Under § 213(a)(2) of the Social Security Act, a claimant is credited for a quarter of employment when he or she has been paid $50 or more in wages or has been credited with $100 or more in self-employment income. 42 U.S.C. § 413(a)(2) (1976). Under § 218 of the Act, however, an employee of the state is excluded from the Act's definition of employment unless the employee is entitled to § 218 coverage. 42 U.S.C. §§ 410(a)(7), 418 (1976 & Supp. IV 1980). The district court held that Berman clearly was not entitled to § 218 coverage. The court observed, therefore, that Berman could only be eligible for Social Security quarters of coverage for 1975 "if [Berman] was self-employed while he rendered services for the department." The court concluded that the record amply supported its conclusion that Berman's contract as a consultant to the state, coupled with his special expertise in the area of historical investigations, indicated that the ALJ had construed the Act's self-employment requirements too narrowly. Furthermore, although the ALJ concluded that Berman was a common law employee of Illinois, the district court rejected this conclusion by referring to Berman's relative independence in discharging his duties. The court also rejected the Secretary's assertion that, since Berman was required to report periodically and because the contract contained a termination clause, Berman was a common law employee. The court observed that reporting requirements are not inconsistent with the tasks of a consultant. Finally, the court rejected the Secretary's assertion that the termination clause was at will, pointing out that the state could terminate the agreement only if it gave Berman 15 days written notice.

7. Although Berman's contract began in the last quarter of 1974, the Administration credited Berman for the last quarter of 1974 for wages on a job prior to commencing work under the Department's contract. Consequently, the question of credit for work during 1974 pursuant to the Department contract was moot. As for 1975, the district court held that, while Berman originally had sought two quarters of coverage for 1975, a determination that the ALJ erred required crediting Berman with four quarters for 1975, because his self-employment income would exceed $400.

EAJA.[8] After making this determination, the court held that the instant action satisfied the substantive provisions of the EAJA. Specifically, the court held that the instant action was covered by the EAJA, 28 U.S.C. § 2412(b) (Supp. IV 1980), since the Secretary contested Berman's action in the district court. As explained below, the EAJA applies to an SSA claimant's district court action, although a claimant cannot obtain attorneys' fees under the EAJA for representation during an administrative SSA proceeding. H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 20, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4984, 4999; 126 Cong.Rec. H–10220 (October 1, 1980) (recovery of attorneys' fees in Social Security cases limited to actions in which Administration contests action in federal district court) (remark of Congressman Railback). The district court further held that the

standard for awarding the attorneys' fees under the EAJA was met in the instant action, since the position of the United States in the litigation was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A).[9] The district court, applying the Act's reasonableness standard to determine whether the government's position was substantially justified, held that it was not. The government's position was erroneous as a matter of law since the Secretary relied on a defense that Berman was a contractual service employee when this category of employment did not exist during the term of the contract. H.R.Rep. No. 1418, *supra,* at 10 (test of whether a government action is substantially justified is essentially one of reasonableness).[10] The district court accordingly granted Berman's fee application in amount of $2,310.50 in fees and expenses plus costs.[11]

8. Since the chronology of events at this stage of the proceeding was critical to the court's decision on attorneys' fees, the events should be briefly summarized. On August 17, 1981, the clerk of the court entered judgment pursuant to Fed.R.Civ.P. 58, implementing the court's August 14 memorandum order. The August 17 judgment was not recorded on the docket, however, until September 2. Since entry of judgment is not completed until it is recorded on the docket, 6A Moore's Federal Practice ¶ 58.05[2], at 58–234 (2d ed. 1983); 11 Wright & Miller, Federal Practice and Procedure § 2785 (1973), defendant's time within which to file a notice of appeal commenced on September 2. Under federal appellate procedure, Fed.R.App.P. 4(a), a losing party in an action in which an officer of the United States is a party (the Secretary here) has 60 days after entry of judgment to file a notice of appeal. The instant case therefore was pending on October 1, 1981, the effective date of the EAJA. The district court so held because the losing party's right to appeal had not expired as of October 1. The question of whether the case was pending on October 1 is highly relevant, since the EAJA limits the availability of attorneys' fees under the EAJA to adversary adjudications "*pending on,* or commenced on or after, [October 1, 1981]." EAJA, Pub.L. No. 96–481, § 208, 94 Stat. 2330 (1980) (emphasis added). *See Knights of the K.K.K. v. East Baton Rouge,* 679 F.2d 64, 67 (5th Cir.1982) (action under EAJA "pending" so long as a party's right to appeal has not been exhausted or has not expired); *Hehdt v. Citizens State Bank,* 668 F.2d 444, 446 (8th Cir.1982) (action pending under the EAJA where appeal was from denial under

42 U.S.C. § 1988 (1976) of attorneys' fees and costs pending on October 1, 1981); *see also Perzinski v. Chevron Chemical Co.,* 503 F.2d 654, 657 (7th Cir.1974) (applying Wisconsin law); *Williams v. State,* 62 Cal.App.3d 960, 133 Cal.Rptr. 539 (1976); *In re Estate of Stith,* 45 Ill.2d 192, 258 N.W.2d 351, 353 (1970). Finally, Berman met the requirement under the EAJA that he apply for fees within thirty days of the final judgment. 28 U.S.C. § 2412(d)(1)(B) (Supp. IV 1980).

9. The "substantially justified" standard was adopted as an alternative to either granting automatic awards of attorneys' fees or granting fees only when the government's position in the action is arbitrary or frivolous. H.R.Rep. No. 1418, *supra,* at 13–14. Under the "substantially justified" standard, the government has the burden of proving that, in litigating the action, its position was substantially justified.

10. The government must establish that its position had a reasonable basis in law and fact. H.R.Rep. No. 1418, *supra,* at 13.

11. The court held that fees for work done by a law student who assisted Berman's lawyer should be awarded to Bemis because the fees charged for the student's work were reasonable and attorneys commonly use law students to minimize litigation costs. The sum of $855.50 was allowed for the law student's work and was included in the $2,310.50 allowed to Berman. The charge for the student's work was based on an hourly rate of $14.00 per hour. Although the court allowed the charges based on the law student's work, it recognized that

On the Secretary's motion for reconsideration, the court rejected his contention that sovereign immunity bars an award of attorneys' fees under the EAJA. The court also held that there is no indication in the statute that fees could be divided between pre- and post-effective date work.

## II.

On appeal, the Secretary challenges only the grant of attorneys' fees under the EAJA. He claims that the court erred in awarding attorneys' fees for work performed prior to the effective date of the EAJA. Consequently, the Secretary does not dispute on appeal that the instant action was *pending* on October 1, 1981. Furthermore, he does not argue that the government's position was substantially justified. The sole question presented on this appeal, therefore, is the narrow one of whether a court is precluded from granting attorneys' fees for work performed *before* the effective date of the EAJA.[12]

The Secretary's argument is twofold. First, he argues that Congress in enacting the EAJA did not intend to provide for awards of retroactive attorneys' fees. Second, he argues that the district court (and other federal courts that have allowed retroactive attorneys' fees under the EAJA)

failed to consider the proper application of the sovereign immunity doctrine. We shall discuss each of these arguments in turn.

## RETROACTIVITY UNDER THE EAJA

■ The EAJA was enacted by Congress in 1980. By its terms, it expires in 1984. *See* EAJA, Pub.L. No. 96–481, §§ 203(c), 204(c), 94 Stat. 2327, 2329 (1980).[13] House Report 1418 makes it clear that the EAJA is experimental in nature—an attempt to alter for this limited period the American rule regarding attorneys' fees. Under the American rule, as indicated above, each party traditionally bears his or her own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society, supra* note 4, at 241 (prevailing party ordinarily not entitled to attorneys' fees from losing party); *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2nd Cir. 1980) (although origin of American rule is unclear, there is no doubt about its current vitality).[14] In recent years, Congress by statute has created a number of exceptions to this general rule.[15] Many of these statutory exceptions were intended to address specific types of litigation of public interest.[16] For example, in the wake of the Supreme Court's decision in *Alyeska,* where the Court limited the inherent powers of courts to award fees when the prevailing

---

courts are split under an analogous statute over whether to award that part of the fees attributable to law student research. *Compare Bolden v. Pennsylvania State Police,* 491 F.Supp. 958, 965–66 (E.D.Pa.1980) (award granted under 42 U.S.C. § 1988 (1976)), *with Scheriff v. Beck,* 452 F.Supp. 1254, 1261 (D.Colo.1978) (award denied under 42 U.S.C. § 1988 (1976)).

**12.** The Secretary asserts that he does not challenge the district court's rulings on other EAJA issues because of the "relative smallness of the EAJA award and the importance of the retroactivity question...." The Secretary nevertheless "remains of the view that the district court reached an incorrect result on the other EAJA issues in this case." Only the retroactivity issue is before the Court.

Although all of the work by Berman's counsel was completed prior to October 1, 1981, the retroactivity question is germane to other cases which were in the midst of litigation on October 1, 1981 and attorneys' fees reflected work

performed both before and after October 1, 1981.

**13.** The EAJA continues to apply, however, through final disposition of actions commenced before the expiration date. EAJA, Pub.L. No. 96–481, §§ 203(c), 204(c), 94 Stat. 2327, 2329. House Report 1418 states that "[t]he [EAJA] is intended to be a limited experiment which will be reviewed and deevaluated at the end of three years." H.R.Rep. No. 1418, *supra,* at 16.

**14.** Note 4 *supra.*

**15.** *E.g.,* Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (1976); Consumer Product Safety Act, 15 U.S.C. §§ 2060(c), 2072(a), 2073 (Supp. V 1981); Organized Crime Control Act, 18 U.S.C. § 2520 (1976); Voting Rights Act of 1975, 42 U.S.C. § 1973*l*(e) (1976); Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976); Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b), 2000e–5(k) (1976); Civil Rights Act of 1968, 42 U.S.C. § 3612(c) (1976).

**16.** H.R.Rep. No. 1418, *supra,* at 8.

party acted as a private attorney general,[17] Congress enacted the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988, which allows a court in its discretion to grant attorneys' fees to the prevailing party in civil rights actions. The EAJA, in contrast, was not intended to address the problems of a particular class of litigants in pursuing their actions against the federal government. Instead, the EAJA applies generally to a wide range of cases. It sets forth, however, specific prerequisites for cases in which an agency or court may allow attorneys' fees to a party who prevails against the government.

The EAJA is codified in two sections of the Code: 5 U.S.C. § 504 (Supp. IV 1980) and 28 U.S.C. § 2412 (Supp. IV 1980). Section 2412 sets forth the general rule regarding the liability of the federal government for fees and costs. Section 504 provides for an agency's liability for fees and costs arising from an adversary agency adjudication. On the instant appeal only Section 2412 is relevant, since the district court held that the Secretary was not liable for fees incurred during the administrative stage of the proceeding.

Before the EAJA, Section 2412 authorized an award of attorneys' fees against the United States only where specifically provided by statute. The EAJA amended this section to provide that if certain conditions are met any prevailing party may apply for attorneys' fees against the government unless such fees are expressly prohibited by another statute. 28 U.S.C. § 2412(b). These conditions are quite specific. For example, a "party" having a net worth in excess of $1,000,000 at the time an action is commenced is ineligible to apply for attor-

neys' fees, 28 U.S.C. § 2412(d)(2)(B)(i); fees are limited to reasonable attorneys' fees, 28 U.S.C. § 2412(d)(2)(A); and the party seeking an award must submit an application within 30 days of final judgment, 28 U.S.C. § 2412(d)(1)(B). Moreover, as we have stated above, a prevailing party may obtain attorneys' fees only if the government's position was not "substantially justified", 28 U.S.C. § 2412(d)(1)(A). Congress placed on the government the burden of establishing that its position was substantially justified. This is consistent with the well recognized policy that the party with greater access to and knowledge of the facts should bear the burden of proof. H.R.Rep. No. 1418, *supra,* at 10–11.[18]

The EAJA was enacted largely to encourage individuals and small businesses to litigate against the government adverse determinations in administrative proceedings and civil actions, regardless of the cost of such litigation. In view of the traditional American rule regarding attorneys' fees, however, Congress concluded that, if it were to facilitate a prevailing private party's obtaining reimbursement for his or her legal expenses, then individuals and small businesses would be less likely to be deterred from challenging government action due to the high cost of civil litigation. H.R.Rep. No. 1418, *supra,* at 9–10. Moreover, it has been suggested that the EAJA was intended to compensate parties for expenses incurred *in defending against unreasonable government action*—a purpose which arguably is distinct from mitigating the deterrent effect of litigating. Robertson and Fowler, *Recovering Attorneys' Fees From the Government under the Equal Access to*

---

17. *Alyeska, supra* note 4, at 269. In *Alyeska,* the Court of Appeals for the District of Columbia Circuit had sanctioned the award of attorneys' fees on the basis of a new exception to the American rule—vindicating important statutory rights of all citizens. *Id.* at 245. The Supreme Court rejected this novel exception, holding that it was more appropriate to await legislative guidance before fashioning such a "far-reaching exception" to the American rule. *Id.* at 247.

18. Congress made clear, however, that, merely because the government loses a case, a presumption does not arise that the government's position was not substantially justified. Furthermore, the government need not demonstrate that its position had a substantial probability of prevailing. H.R.Rep. No. 1418, *supra,* at 11. Moreover, the EAJA provides for a "special circumstances" exception which allows the government to defeat a fee application even though its position is not substantially justified. 5 U.S.C. § 504(a)(1) (Supp. IV 1980); 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980).

*Justice Act,* 56 Tulane L.Rev. 903, 944 (1982) (hereinafter *"Recovering Attorneys' Fees"*).

The EAJA also has a parallel objective of deterring the government from pursuing litigation—either in initiating it or defending against it—when the government's position is not substantially justified. According to House Report 1418, the prevailing bill—S. 265—"rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy." H.R.Rep. No. 1418, *supra,* at 10. Litigation against the government, for example, can correct an erroneous agency rule or "provide a vehicle for developing or announcing more precise rules." H.R.Rep. No. 1418, *supra,* at 10.

House Report 1418 also indicates that Congress intended the EAJA to apply to appeals to the federal courts under the Social Security Act, although attorneys' fees are not available in administrative proceedings under that Act. H.R.Rep. No. 1418, *supra,* at 12; *see also Shumate v. Harris,* 544 F.Supp. 779, 781–82 (W.D.N.C.1982); *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1321 (S.D.N.Y.1982) (although EAJA not applicable to administrative proceedings under Social Security Act, it does apply to district court review of Social Security decisions). The exclusion of applications for attorneys' fees in SSA administrative proceedings apparently was intended to reduce the financial strain on agencies from the EAJA. H.R.Rep. No. 1418, *supra,* at 22. In its report to the Committee on the Judiciary, the Congressional Budget Office (CBO) indicated that in fiscal year 1978, SSA cases accounted for 91% of all administrative cases which were adjudicated. Consequently, the CBO concluded that 9% (or 20,000) agency adjudications, based on 1978 data, would be covered by the EAJA. H.R.Rep. No. 1418, *supra,* at 22. The legislative history of the EAJA clearly indicates that Berman is precluded from obtaining attorneys' fees for work done during the administrative stage of the case. This reflects Congress' deliberate attempt to tailor eligibility for attorneys' fees so as to minimize the cost of the EAJA. As we indicate below, this cost-tailoring of the EAJA by Congress is relevant to the question of whether Congress was sufficiently explicit in its waiver of sovereign immunity in connection with the retroactive award of attorneys' fees.

The EAJA accordingly was enacted to establish a *general* statutory exception for awarding attorneys' fees to parties who prevail against the government. This was intended to be accomplished by "permit[ting] a court in its discretion to award attorneys' fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties." H.R.Rep. No. 1418, *supra,* at 9.

Against this background, we turn to the specific issue before us on this appeal: whether Congress intended to authorize the granting retroactively of attorneys' fees for work performed prior to the effective date of the Act. Section 208 of the EAJA sets forth its effective date and the scope of its application as follows:

"Sec. 208. This title and the amendments made by this title shall take effect on October 1, 1981, and shall apply to any adversary adjudication, as defined in section 504(b)(1)(C) of title 5, United States Code, and any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is *pending* on, or commenced on or after, such date."

EAJA, Pub.L. No. 96–481, § 208, 94 Stat. 2330 (1980) (emphasis added).

We must decide whether this section, coupled with the overall purpose of the EAJA, requires that a prevailing party who otherwise has satisfied the prerequisites of the Act, nevertheless should be barred from obtaining an award of attorneys' fees because his legal fees were for work performed *before* October 1, 1981.

Applying one of the basic canons of statutory interpretation—the plain meaning of the statute—Section 208 should cover work

performed before and after the effective date of the Act as long as the action was pending on October 1, 1981 or was commenced on or after that date. Once a prevailing party, as in the instant case, establishes that the action was pending on October 1, 1981, the Act becomes applicable.[19] If Congress had intended to exclude pre-effective date fees, it could have done so by simply stating in Section 208 that only post-effective date fees for pending actions or actions commenced on or after October 1, 1981 were covered by the Act. Congress having failed to exclude pre-effective date fees, it is inappropriate for a court to impose a limitation which Congress chose not to impose. *Wolverton v. Schweiker*, 533 F.Supp. 420, 423 (D.Idaho 1982).

Moreover, we are not persuaded by the construction of Section 208 suggested in *Commodity Futures Trading Commission v. Rosenthal & Co.*, 537 F.Supp. 1094, 1096 (N.D.Ill.1982). There the district court, although reserving judgment on the retroactivity issue, suggested as one rational reading of Section 208 that the "take effect" clause of the section might apply to the "fees ... incurred" language of the Act, 28 U.S.C. § 2412(d)(1)(A), and thus apply only to fees incurred after October 1, 1981.[20] In our view, this reading of Section 208 is unwarranted. *See Nunes-Correia v. Haig*, 543 F.Supp. 812, 815 (D.D.C.1982) (construction suggested by court in *Commodity Futures Trading Commission* is "so strained that this court inclines to hold that the *plain language* of the statute explicitly authorizes fees for pre-October 1, 1981 work") (emphasis added).

Further, the court in *Commodity Futures Trading Commission* referred to the district court's construction of the EAJA in the instant *Berman* case as "a reasonable—perhaps even the normal—one." *Commodi-*ty *Futures Trading Commission, supra*, 537 F.Supp. at 1096.

Granting attorneys' fees retroactively also is consistent with the broad remedial purposes of the Act. As we have stated above, the purposes of the Act are threefold: (1) to encourage private litigants to pursue their administrative and civil actions against the government and not be deterred by the prospect of having to absorb the cost of their own attorneys' fees; (2) to compensate parties for the cost of defending against unreasonable government action; and (3) to deter the federal government from prosecuting or defending cases in which its position is not substantially justified.

In the instant case, the first purpose of the Act is not applicable. Berman commenced this action before the Act was enacted. Indeed, Berman's counsel was appointed several days before the Act was enacted. Consequently, it cannot be said that Berman pursued the instant action because of the EAJA.

The compensatory purpose of the Act, however, arguably is apposite here. Berman was the prevailing party. Furthermore, the district court concluded that the government's position was not substantially justified. Under the compensatory purpose rationale, normally no further inquiry is required. In view of the fact that Bemis originally accepted Berman's case without any reasonable expectation of remuneration, however, it would be disingenuous to conclude that awarding attorneys' fees here satisfies the legislative purpose of compensating Berman for his legal expenses. Consequently, we believe that it would be inappropriate to hold that the instant action comes within the Act's compensatory purpose. Robertson and Fowler, *Recovering Attorneys' Fees, supra*, at 944.

---

19. Note 8 *supra* and accompanying text.

20. The court in *Commodity Futures Trading Commission* subsequently concluded that defendants' motion for fees under the Act was premature, but retained jurisdiction over the matter. *Commodity Futures Trading Commis-*sion *v. Rosenthal & Co.*, 545 F.Supp. 1017, 1019 (N.D.Ill.1982). The court also noted that the apparent confusion over the retroactivity issue needed resolution. *Id.* at 1019 n. 2. We settle that issue, at least for this Circuit, in the instant case.

Allowing fees here, however, is consonant with the Act's third purpose: prospectively deterring unreasonable government action. This purpose is quite broad in scope and concerns the impact of a particular adjudication on a pattern of government application of a rule or on the rule itself. H.R. Rep. No. 1418, *supra,* at 10, 20 (litigation under the Act expected to assist government in refining and formulating public policy, and make the government proceed more cautiously and evaluate its losses). Congress hoped that a decision adverse to the government in a particular case that is covered by the EAJA would have the prospective effect of deterring future government litigation in similar cases in which its position is not substantially justified. We believe that Berman's case comes within this third purpose of the Act.

The gravamen of Berman's action is that he was deprived of appropriate earnings record credit because of a determination by the Secretary that he was neither a covered employee of Illinois nor a self-employed consultant. Even the ALJ acknowledged during the hearing that Berman was in a "Catch-22" situation where it was impossible for him to satisfy any of the SSA's earnings record requirements. Berman's situation, however, is not so uncommon as it might appear. In this country, it is not unusual for a state to contract with a highly specialized individual to perform unique services. Awarding attorneys' fees here may have the salutary effect of curbing the Secretary's summary denial of earnings record credit for those individuals situated similarly to Berman, i.e., professionally trained individuals who are employed by states for a limited purpose based on their specialized training. Furthermore, as a result of the instant case, the SSA would be well advised to reevaluate its procedures for determining for earnings record credit purposes whether an individual who has specialized research skills (as Berman does with respect to library research and military history), but whose skills are not in such great demand as to ensure regular employment, nevertheless may be found to be engaged in a "trade or business", 42 U.S.C. § 411 (1976 & Supp. II 1978), i.e., to satisfy the self-employment test.[21]

Finally, we wish to refer briefly to the analysis by the district court in *Allen v. United States,* 547 F.Supp. 357 (N.D.Ill. 1982), where the court, in holding that pre-Act fees should not be allowed retroactively, relied in part on the cost estimate provided by the CBO. In *Allen,* the court observed that the CBO's cost estimate "does not show an immediately large and steady outlay of funds throughout the life of the Act...." *Allen, supra,* 547 F.Supp. at 361. Apparently relying on the gradual increase of estimated funding over the life of the Act, the court concluded that Congress' intent could be inferred in part from these figures and that Congress did not intend that litigants should "receive a windfall award of attorney's fees incurred before the Act took effect." *Id.* We believe the court has misread the CBO report. That report clearly indicates that the gradual increase of estimated expenditures is attributable to the impact of "reporting requirements specified in the bill and the impact that enactment of this bill would have on the size of awards and the number of cases." H.R.

---

**21.** If the purpose of the EAJA is served by awarding attorneys' fees in the instant case, as we believe it is, *a fortiori,* attorneys' fees should be awarded in cases where the work performed by counsel is bifurcated between that done before October 1, 1981 and that done after the effective date of the Act. In cases where substantial work is performed after the effective date of the Act, it is clear that the purpose of the Act in motivating private individuals who are concerned with the inhibiting costs of litigation would apply. It would make little sense to award a private litigant for some of his or her litigation expenses where the litigation serves a public purpose (e.g., challenging an erroneous administrative rule) and then deny that litigant attorneys' fees for work performed prior to the effective date of the Act. No such bifurcation is contemplated in either the Act or its legislative history. *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 351 (D.D.C. 1982). Furthermore, in the bifurcated work situation, the prevailing party also can point to the second and third purposes of the Act as independent bases for awarding retroactive fees, i.e., compensatory fees and prospective deterrence of unjustified government action.

Rep. No. 1418, *supra,* at 23. For example, in arriving at its estimated cost for fiscal year 1982, the CBO computed the costs of all potentially applicable administrative adjudications and civil actions, and arrived at its figure of $92 million.[22] Since the EAJA became effective on the first day of fiscal 1982 (October 1, 1981), obviously there was no reason for the CBO to authorize any funds for fiscal 1981. The court in *Allen* nevertheless states that "[the CBO's] cost estimate shows the outlays starting low in the fiscal year 1981 and increasing sharply in each of the two following years." *Allen, supra,* 547 F.Supp. at 361. The CBO's estimated authorization levels show no finding whatsoever for fiscal 1981, rather than the court's "starting low" assertion in *Allen.*[23] Even if the court in *Allen* mistakenly referred to 1981 when it meant fiscal 1982, this would not alter the fact that the CBO's report supports Berman's position. In the instant case, the award of attorneys' fees was made in fiscal 1982. Actual payment of the award in all likelihood will be made in fiscal 1983 (unless the Secretary seeks further review of the instant decision). Even though the fees in this case were earned in fiscal 1981, payment undoubtedly will be made during the period for which congressional authorization has been made. We therefore find no merit in the claim that, because the fees in this action accrued prior to the effective date of the Act, payment of those fees is barred for the reason that no funds were authorized for fiscal 1981 or because less funding was authorized for fiscal 1982 than for fiscal 1983 and fiscal 1984.[24] *City of Chicago v. HUD,* Nos. 80–4760, 81–1284, slip op. (N.D.Ill. Sept. 7, 1982); *Nunes-Correia v. Haig, supra,* 543 F.Supp. at 815–16 (CBO cost estimates "demonstrate that Congress clearly intended the Act to apply retroactively").

We hold, in light of the plain meaning of Section 208 and the governmental deterrence purpose of the Act, that the EAJA applies retroactively to attorneys' fees in the instant case for work performed prior to October 1, 1981.[25]

## SOVEREIGN IMMUNITY AND THE EAJA

■ Having held that the Act applies retroactively to attorneys' fees for work

---

**22.** The CBO estimated authorization levels for the EAJA are as follows:

| Fiscal year: | Millions: |
| --- | --- |
| 1981 | ----- |
| 1982 | $ 92 |
| 1983 | $109 |
| 1984 | $129 |
| 1985 | ----- |

The estimated outlays for the EAJA are as follows:

| Fiscal year: | Millions: |
| --- | --- |
| 1981 | ----- |
| 1982 | $ 69 |
| 1983 | $115 |
| 1984 | $126 |
| 1985 | $ 20 |

H.R.Rep. No. 1418, *supra,* at 21. The CBO assumed that due to the delays in processing awards "not all funds will be spent during the year for which they are authorized to be appropriated." H.R.Rep. No. 1418, *supra,* at 23.

**23.** Note 22 *supra.*

**24.** Note 22 *supra.* A recent government report on outlays during the first year of the EAJA further undercuts the Secretary's concern that retroactive fee awards will cause a large and unacknowledged governmental liability. During the Act's first nine months, federal judges awarded only $684,000 in attorneys' fees and administrative law judges made no awards. Nat'l L.J., Oct. 18, 1982, at 8, col. 2. Federal courts granted 13 fee applications during this period, while denying 17 others. The relatively small number of applications during the Act's first year apparently has puzzled observers of the Act, some of whom suggest that the Act nevertheless is having a deterrent effect on unreasonable governmental actions. *Id.* In any event, the low level of outlays for the first nine months of fiscal 1982 indicates that granting retroactive fee awards will not strain the Act's funding authorization. On the contrary, it appears that granting retroactive fee awards may well further the objectives of the Act. *See generally* Hearings on Oversight on the Equal Access to Justice Act Before the Subcomm. on Agency Administration of Senate Comm. on the Judiciary, 97th Cong., 2nd Sess. (1982) (statement of Loren A. Smith, Chairman, Administrative Conference of the United States).

**25.** Despite the Secretary's reservations about the district court's conclusions on the other EAJA issues in the instant case, note 12 *supra,* we are satisfied that the court properly applied the EAJA in all respects.

performed prior to the effective date of the Act, we turn next to the Secretary's contention that the sovereign immunity doctrine bars granting attorneys' fees in the instant case.

We recently have observed, consistent with Supreme Court authority, that "[w]aivers of sovereign immunity must be strictly construed and are not to be extended by implication." *Commissioners of Highways v. United States,* 684 F.2d 443, 444 (7th Cir.1982); *see also Lehman v. Nakshian,* 453 U.S. 156, 160–61 (1981); *Champaign-Urbana News Agency, Inc. v. J.L. Cummins News Co., Inc.,* 632 F.2d 680, 687 (7th Cir.1980). We therefore must determine whether Congress unequivocally expressed its intent to waive sovereign immunity in this type of case. *United States v. Mitchell,* 445 U.S. 535, 538 (1980); *United States v. King,* 395 U.S. 1, 4 (1969) (waiver "cannot be implied but must be unequivocally expressed"); *United States v. Sherwood,* 312 U.S. 584, 586 (1941) ("terms of [government's] consent to be sued ... define [a] court's jurisdiction to entertain the suit"). We turn again to the language of the Act and its legislative history to the extent that they bear upon the sovereign immunity doctrine.

The EAJA was passed in the wake of the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society, supra* note 4. There, as we have stated above, the Court held that the award of attorneys' fees against the United States when the prevailing party acted as a private attorney general is barred by 28 U.S.C. § 2412 unless there is an express statutory exception. Although Congress recognized that individuals who fall within the coverage of the EAJA are not serving roles identical to those of the private attorney generals referred to in *Alyeska,* Congress viewed the public function of private litigants who might challenge erroneous administrative actions as analogous to that of the private attorney general. H.R.Rep. No. 1418, *supra,* at 10.[26]

In drafting the EAJA, Congress thus was aware of the mandate of *Alyeska* that a waiver of sovereign immunity under 28 U.S.C. § 2412 in connection with attorneys' fees must be express and that Congress must unequivocally provide when attorneys' fees can be awarded against the United States. *Alyeska, supra* note 4, at 247, 265–68.[27] Consistent with this, the EAJA sets forth detailed provisions with respect to eligible parties, reasonable fees, deadlines for filing applications for fees, and other related matters. Congress excluded SSA administrative proceedings, however, so as to reduce the potential costs of the EAJA to the government.

With respect to fees earned prior to October 1, 1981, Congress required in Section 208 only that an action be *pending* on the effective date of the Act. The "pending" action requirement by definition encompasses cases in which attorney work was performed before the effective date of the Act. Any other construction of Section 208 —even applying the sovereign immunity's strict construction doctrine—would give the provision an artificially tortured reading. Moreover, as we have indicated above, granting retroactive fee awards is consonant with the plain language of Section 208 and with the legislative purpose of the Act. We therefore hold that Congress in enacting the EAJA explicitly waived the government's immunity from fee awards and that

**26.** S. 265 (which became the EAJA) was premised on the proposition that "a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy .... An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide for developing or announcing more precise rules .... Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action

and also bear the costs of vindicating their rights." H.R.Rep. No. 1418, *supra,* at 10.

**27.** The Court in *Alyeska* was troubled by an attempt to create a judicial exception to the American rule that would undercut the express language of § 2412. *Alyeska, supra* note 4, at 247, 267–68. The EAJA amended § 2412. In so doing, Congress followed the Court's recommended approach in *Alyeska. Id.* at 247; note 17 *supra.*

granting retroactive fee awards does not require a court to extend the waiver by implication.

■ Furthermore, where Congress by statute has waived sovereign immunity and has demonstrated a clear legislative intent with respect to the broad remedial purpose of the Act, as here, each section of the Act must be accorded an interpretation that is consonant with the legislative purpose of the entire Act. Accordingly, we believe it is consistent with the broad remedial purpose of the Act to grant fees for pre-effective date work.

Finally, we wish to refer to a recent decision of our Court upon which the Secretary relies in support of his claims that Section 208 cannot be construed as a waiver of sovereign immunity with respect to retroactive fee awards. *Commissioners of Highways v. United States, supra,* 684 F.2d 443. In that case, we held that where the only aspect of a case pending on October 1, 1981 was the appellants' appeal from the denial of an award of attorneys' fees, the case was not *pending* for purposes of the EAJA on October 1, 1981. *Commissioners of Highways, supra,* 684 F.2d at 444. Thus, we did not reach the retroactivity issue that is before us in the instant case, since *Commissioners of Highways* never got beyond the threshold requirement that a case be pending on the effective date of the Act in order for the EAJA to apply.

In *Commissioners of Highways,* however, we did discuss the implications of the Supreme Court's upholding in the past the awarding of attorneys' fees retroactively where the only issue on an appeal pending when the statute was enacted was the propriety of a district court order denying attorneys' fees. *Id.* Since the instant case satisfies the explicit requirement of the EAJA that it be pending on the effective date of the Act, our analysis of the "pending" action requirement of the EAJA in *Commissioners of Highways* relates to an issue not before us in the instant case. *See generally White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 451 n. 13 (1982) (fee inquiry separate from decision on the merits). Even if our discussion of the EAJA in *Commissioners of Highways* were apposite to the instant case, it appears that the appellants in that case did not satisfy another fundamental prerequisite of the Act, namely, that they be "parties" under the definition set forth in Section 2412(d)(2)(B). *Commissioners of Highways, supra,* 684 F.2d at 445. For these reasons, we believe that the analysis of the Act and the discussion of the sovereign immunity doctrine in *Commissioners of Highways* dealt with issues not before us in the instant case and therefore are not relevant here.[28]

We hold that Congress explicitly waived the government's sovereign immunity for cases that fall within the ambit of the EAJA and that granting attorneys' fees retroactively in the instant action is consistent with the express terms and purpose of the Act.

**28.** As indicated above, our discussion of sovereign immunity in *Commissioners of Highways* was in connection with the Act's requirement that an action be "pending" on the effective date of the Act. Since the underlying action on the merits was no longer pending on October 1, 1981, we were understandably reluctant to imply a waiver of sovereign immunity. That problem does not exist here. Furthermore, in *Commissioners of Highways* we rejected appellants' reliance on *Bradley v. School Board of the City of Richmond,* 416 U.S. 696 (1974) (attorneys' fees granted retroactively in school desegregation case), although in *Bradley* and in *Commissioners of Highways* federal statutes regarding attorneys' fees became law while appeals concerning attorneys' fees were pending in the courts of appeals. Our observation in *Commissioners of Highways* that *Bradley* did not involve a sovereign immunity bar reflects a critical distinction between the two cases—one that required a different analysis of the retroactive fee issue in *Commissioners of Highways* than in *Bradley.* In the instant case, however, Berman applied for attorneys' fees *after* the effective date of the Act. Moreover, Berman otherwise satisfied the requirements of the Act. Furthermore, although we suggested in *Commissioners of Highways* that the appellants in that case were not deterred by the costs of litigation, we conclude in the instant case that another purpose of the Act (prospective deterrence of unreasonable government action) applies in *Berman.*

## III.

A substantial majority of the courts which have ruled on the retroactivity issue that is before us in the instant case have concluded, as we do, that the Act applies retroactively to work performed before October 1, 1981.

Indeed, the only contrary views appear to be those set forth in the two Northern District of Illinois cases referred to above, namely, *Allen v. United States, supra,* and *Commodity Futures Trading Commission v. Rosenthal & Co., supra,* the latter not being a square holding on the retroactivity issue.

The following cases appear to have reached the same conclusion as we have on the retroactivity issue: *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d 700, 712–13 (3d Cir.1983); *Kay Manufacturing Co. v. United States,* 699 F.2d 1376, 1378–79 (Fed.Cir. 1983) (EAJA applies retroactively, but government's position substantially justified); *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 77 (4th Cir.1982) ("Act's test for recovery of attorney's fees is whether the case was pending on or after October 1, 1981, and not when the fees were incurred."), *reh'g en banc denied* (Feb. 7, 1983); *MacDonald v. Schweiker,* 553 F.Supp. 536, 541 (E.D.N.Y.1982) (adopting reasoning of district court in *Berman*); *Grand Boulevard Improvement Assoc. v. City of Chicago,* 553 F.Supp. 1154, 1160–61 (N.D.Ill.1982); *Globe, Inc. v. United States,* 553 F.Supp. 7, 9–10 (D.D.C.1982); *Underwood v. Pierce,* 547 F.Supp. 256, 260–61 (C.D.Cal.1982) (applying analogous federal statutes under which attorneys' fees have been granted retroactively); *Lauritzen v. Secretary of Navy,* 546 F.Supp. 1221, 1224 n. 2, 1226 (C.D.Cal.1982) (Act applies retroactively, although government's position was substantially justified); *Shumate v. Harris,* 544 F.Supp. 779, 782–83 (W.D.N.C. 1982) (granting fees retroactively under EAJA); *Nunes-Correia v. Haig, supra,* 543 F.Supp. at 814–16; *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1323–24 n. 15 (S.D.N.Y.1982) (retroactive fee award permitted under Act so long as matter was pending on October 1, 1981); *Wolverton v. Schweiker,* 533 F.Supp. 420, 423 (D.Idaho 1982) (plain meaning of EAJA requires retroactive awards); *Photo Data, Inc. v. Sawyer, supra,* 533 F.Supp. at 350–51 (D.D.C.1982) (nothing in legislative history indicates that Congress intended to bifurcate cases into pre- and post-October 1, 1981 work); *National Lawyers Guild v. Attorney General,* 94 F.R.D. 616, 620 (S.D.N.Y. 1982) (Act permits retroactive fee awards). *See generally Knights of the K.K.K. v. East Baton Rouge Parish School Board,* 679 F.2d 64, 67–68 (5th Cir.1982); *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426, 428 n. 4 (5th Cir.1982) (noting retroactivity issue); *Heydt v. Citizens State Bank,* 668 F.2d 444, 446, 448 (8th Cir.1982) (implying that EAJA is retroactive, but government's position was substantially justified); *Donovan v. Dillingham,* 668 F.2d 1196, 1199 (11th Cir.1982) (not reaching retroactivity issue because government's position was substantially justified); *Ellis v. United States,* 550 F.Supp. 674, 676 n. 4 (Ct.Cl.1982); *Commodities Futures Trading Commission v. Rosenthal & Co., supra,* 545 F.Supp. at 1019 n. 2 (noting divergent approaches to retroactivity issue taken in *Allen* and *Berman*); *WATCH v. Harris,* 535 F.Supp. 9, 13–14 (D.Conn.1981); *Matthews v. United States,* 526 F.Supp. 993, 1008 (M.D.Ga.1981) (denying award, but not discussing retroactivity issue); *Muth v. Marsh,* 525 F.Supp. 604, 609 (D.D.C.1981); Hearings on Oversight on the Equal Access to Justice Act Before the Subcomm. on Agency Administration of Senate Comm. on the Judiciary, 97th Cong., 2nd Sess. (1982) (statement of Loren A. Smith, Chairman, Administrative Conference of the United States) (noting that courts have not resolved retroactivity issue); Robertson and Fowler, *Recovering Attorneys' Fees, supra,* at 943–44 (retroactive application is consistent with the purposes of the Act).

Despite the weight of authority which supports our conclusion in the instant case, the Secretary nevertheless argues that *Commissioners of Highways v. United States, supra, Allen v. United States, supra,* and *Brookfield Construction Co. v. United States,* 661 F.2d 159 (Ct.Cl.1981), should

compel us to reach a contrary conclusion on the retroactivity issue. We disagree.

As we have indicated above, *Commissioners of Highways* is distinguishable in that it rests on the fact that the case was not pending on the merits on October 1, 1981 and the appellants were not "parties" within the definition of the Act.

The decision in *Allen* rests on an application of the three factors relied on in *Brookfield Construction Co.,* where the Court of Claims concluded that a contractor could not recover retroactive statutory interest on its subsequently allowed claims against the government under the Contract Disputes Act of 1978, 41 U.S.C. § 611 (Supp. II 1978). The three factors relied on in *Brookfield Construction Co.* were: (1) Congress did not indicate that pre-Contract Disputes Act statutory interest would be applicable, thus imposing a large and unauthorized liability on the government; (2) the objectives and purposes of the interest provision of the Contract Disputes Act were not served by imposing pre-Act liability; and (3) sovereign immunity is not waived absent a clear mandate of Congress. *Brookfield Construction Co., supra,* 661 F.2d at 163.

Applying these three factors to the instant case, the Secretary argues that a retroactive fee award is inappropriate under the EAJA. We find the Secretary's reliance on *Brookfield Construction Co.* to be unpersuasive. As we have indicated above, the CBO Report accompanying House Report 1418 simply does not support the Secretary's argument that Congress did not intend that pre-Act fees would be included in the estimated authorizations.[29] Moreover, it is evident that awarding Berman attorneys' fees in the instant case will further the Act's goal of prospectively deterring unreasonable government action. Finally, it is clear in the instant case that Congress has explicitly waived the government's sovereign immunity through the EAJA. We therefore believe that the three

factors relied on by the court in *Brookfield Construction Co.* are inapposite to the instant case. *Kay Manufacturing Co. v. United States, supra,* 699 F.2d at 1378 (distinguishing *Brookfield*). In view of the fact that the court in *Allen v. United States, supra,* relied on these three factors, we decline the Secretary's invitation to follow *Allen's* analysis of the EAJA and its holding with respect to retroactive attorneys' fees awards.

In short, we are satisfied that our holding in the instant case is consistent with the approach that most federal courts throughout the country have taken in resolving the retroactivity issue.

Accordingly, we affirm the district court's award of $2,310.50 in fees and expenses plus costs in the instant case.

Costs to appellee on this appeal.

AFFIRMED.

COFFEY, Circuit Judge, dissenting.

I dissent as I disagree with the majority's decision allowing recovery under the Equal Access to Justice Act (EAJA) for attorney's fees incurred prior to the effective date of legislation, October 1, 1981. The broad liability imposed on the public treasury by the majority in this case is an unwarranted departure from well-settled legal principles reciting that: (1) statutes are to be applied only prospectively unless there is clear, strong and imperative statutory language to the contrary; and (2) a limited waiver of sovereign immunity, such as the EAJA, must be strictly construed and must not be extended by implication. Neither the clear and unambiguous statutory language of the EAJA nor its legislative history discloses a congressional intent to open the public treasury to pay retroactive attorney's fees under the EAJA. Furthermore, allowing recovery of retroactive attorney's fees fails to promote the purpose of the EAJA, but rather merely constitutes an unwarranted wind-

---

**29.** In *Brookfield,* the plaintiff sought nearly $1 million in interest. Furthermore, the court in *Brookfield* noted that the Corp of Engineers alone had $214 million in contract claims pend-

ing against it on the effective date of the Contract Disputes Act. *Brookfield, supra,* 661 F.2d at 163. By contrast, Berman sought only $2,310.50 in fees. Note 24 *supra.*

fall for attorneys, at the taxpayer's expense.

## I.

It is a well-settled legal principle that retroactive application of a legislative act is impermissible absent a clear and unequivocal expression of a contrary Congressional intent. This court explicitly stated in *South East Chicago Com'n v. Department of Housing and Urban Development,* 488 F.2d 1119, 1122 (7th Cir.1973): "There are few principles of law more ancient, and none more respected, than the canon which holds that laws are enacted for the future." Similarly, the Supreme Court has mandated in unequivocal language that:

"[T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past ... [and] a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' "

*Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964). Furthermore, the court in *Alyeska Pipeline Service Co. v. United States,* 624 F.2d 1005, 1013, 224 Ct.Cl. 240 (Ct. Claims 1980) stated:

"This rule [against retroactive application of statutes] governs unless the words in the statute 'are so clear, strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." (quoting *United States v. Heth,* 7 U.S. (3 Cranch) 399, 413 [2 L.Ed. 479] (1806)).

Based on this case law, it is clear that the EAJA cannot be construed as authorizing the retroactive award of attorney fees since the statute contains no "*clear, strong and imperative*" language mandating retroactive application. *Union Pacific Railroad Co. v. Laramie Stock Yards Co.,* 231 U.S. 190 at 199, 34 S.Ct. 101 at 102, 58 L.Ed. 179. The EAJA merely provides that it "shall apply to any adversary adjudication ... which is pending on, or commenced on or after", October 1, 1981. The EAJA nowhere states that fee awards in "pending" cases are to be retroactive, but rather is silent concerning the recovery of pre-October 1981 fees. However, the majority interprets the statute's silence on the issue of retroactivity as mandating the retroactive award of attorney's fees, stating "Congress having failed to exclude pre-effective date fees, it is inappropriate for a court to impose a limitation which Congress chose not to impose." In holding that Congress's silence can be equated with a clear and unequivocal legislative directive for retroactive application of the EAJA, the majority casts aside and destroys well-settled principles of statutory construction to reach a decision based on the social policy that fees should be awarded for pre-October 1981 services. However, proper statutory construction requires that the EAJA only be applied so as to allow for the award of attorney's fees prospectively since "legislation must be considered as addressed to the future, not to the past." *Aleyeska,* 624 F.2d at 1013, quoting *Union Pacific Railroad Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913). "This rule governs unless the words in the statute 'are so clear, strong, and imperative that no other meaning can be annexed to them...." *Aleyeska,* 624 F.2d at 1013, quoting *United States v. Heth,* 7 U.S. (3 Cranch) 399, 413, 2 L.Ed. 479 (1806). Congress' silence on the issue of retroactivity cannot be construed as a clear, strong and imperative indication of an intent to allow a court to legislate for the retroactive recovery of attorney's fees. Rather, where Congress has been silent on the issue of retroactivity, well-settled principles of statutory construction from time immemorial mandate only prospective application of the EAJA.

## II.

The majority's decision to authorize the retroactive award of attorney's fees also violates the legal principle of sovereign immunity which precludes a litigant from asserting a claim against the sovereign

(government) unless the sovereign consents to be sued. *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). It is well-settled that before a prevailing party may recover attorney's fees from an agency of the federal government, that party "must first surmount a formidable barrier, the doctrine of sovereign immunity." *N.A.A.C.P. v. Civiletti,* 609 F.2d 514, 516 (D.C.Cir. 1979). An assessment of attorney's fees against a government agency "is not permissible in the absence of *explicit statutory authority* that may serve as a waiver of the Government's traditional immunity." *E.E.O.C. v. Kenosha Unified School District,* 620 F.2d 1220, 1227 (7th Cir.1980) (emphasis added). "Waivers of sovereign immunity must be strictly construed and are not to be extended by implication." *Commissioners of Highways v. United States,* 684 F.2d 443, 444 (7th Cir.1982). Therefore, retroactive attorney's fees may be awarded under the EAJA, only if, strictly construing the statute against imposing liability on the government, there exists "explicit statutory authority" allowing for such a retroactive waiver of sovereign immunity.

The EAJA states:

"This Title and the amendments made by this Title . . . *shall take effect on October 1, 1981* and shall apply to . . . any civil action . . . pending on, or commenced on or after, such date." (emphasis added). Strictly construing (as we must) this statutory language, it is clear that the EAJA's limited waiver of the Government's sovereign immunity cannot be interpreted as allowing for retroactive recovery of attorney's fees. The majority's interpretation of the EAJA focuses solely on the so-called "pending provision" of the statute, to the exclusion of Congress' explicit statement that the Act "shall take effect on October 1, 1981." By specifying an effective date, Congress envisioned the payment of fees for work done on or after that date, for to construe it otherwise would force the treasury to pay out unappropriated funds. Under the majority's tortured construction of the statute, the language pertaining to the effective date of the statute is rendered meaningless since in this case the majority

has authorized recovery of attorney's fees for legal services performed *before* the effective date of the statute. It is well-settled that a statute must be construed as a whole rather than relying on one word, phrase or sentence in the statute. *Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Brach v. Amoco Oil Co.,* 677 F.2d 1213 (7th Cir.1982). In reading one provision of the statute (the so-called "pending provision") in a manner which renders meaningless another provision of the statute (the effective date), the majority has ignored the cardinal principle of statutory construction that "in construing statutes we are obligated to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979).

The most logical and well-reasoned legal interpretation of the EAJA, and the interpretation most consistent with the principle that "waivers of sovereign immunity must be strictly construed and are not to be extended by implication", *Commissioners of Highways,* 684 F.2d at 444, is that the "pending" provision determines only in *which cases* fees may be awarded, while the language pertaining to the effective date of the Act governs *which fees* may be awarded in pending cases—only those fees incurred after the effective date of the Act. Any other interpretation of the statute, including the majority's, constitutes a judicial extension by implication of a limited waiver of sovereign immunity, in direct violation of the "duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981).

A clear indication that Congress did not authorize the award of attorney's fees for legal services rendered prior to October 1, 1981 is found by examining 28 U.S.C. section 2412(d)(4)(B). That subsection of the EAJA states:

"(B) There is authorized to be appropriated to each agency for each of *the fiscal years 1982, 1983, and 1984,* such sums as may be necessary to pay fees and

other expenses awarded pursuant to this subsection in such fiscal years."
(emphasis added). Thus, Congress appropriated funds for awards under the EAJA *only for the fiscal years commencing on October 1, 1981*—no funds were appropriated for the fiscal year 1981. Nevertheless, the majority has seen fit to require the government to pay for legal services rendered in the 1981 fiscal year, despite the fact that Congress decided against appropriating money for such payments. The majority's decision ignores the fact that courts not only have the obligation to interpret and apply the law, but also to exercise fiscal responsibility. The majority in this case acts as if they were operating in an economic vacuum and imposes an unwarranted liability on the government.

### III.

I reject the majority's conclusion that permitting retroactive recovery of attorney's fees is consistent with the purpose of the EAJA. Section 202 of the EAJA sets forth the purposes underlying enactment of the EAJA:

"(a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

\*     \*     \*     \*     \*     \*

(c) It is the purpose of this title . . .
(1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney's fees, expert witness fees, and other costs against the United States . . ."

Clearly, awarding retroactive attorney's fees in this case fails to further the Act's purpose of reducing the economic deterrents to challenging government action. The plaintiff Berman was obviously not "deterred from seeking review of . . . gov-

ernmental action because of the expense involved" in suing the government as he commenced this action *pro se* sixteen months before the EAJA even became effective. Thus, it is clear that the plaintiff commenced this action against the government with no expectation of being reimbursed for his attorney's fees, in fact, since he was proceeding *pro se* he presumably did not expect to even incur attorney's fees. Furthermore, at the time the district court appointed an attorney to represent the plaintiff, the court specifically informed the attorney that "this case will not produce a fund from which you could be compensated and there is no provision under the Social Security Act for an award of attorney's fees. Therefore, your representation is truly pro bona [sic] publico." Since the attorney in accepting the court's appointment did so on a *pro bono* basis with no expectation of remuneration for his services, it would thus certainly impose no hardship to deny his request for attorney's fees. As this court recently stated, it is

"the recognized ethical responsibilities of each lawyer engaged in the practice of law to provide public interest legal services without a fee.

\*     \*     \*     \*     \*     \*

"The bar within this Circuit has long viewed appointments of counsel as part of its professional duty to provide public service. We have faith that lawyers always will be found who are willing to represent the indigent without remuneration.

\*     \*     \*     \*     \*     \*

"*Pro bono publico* work is an established tradition and it is up to the district courts to tap the reservoir of talent that exists within this Circuit."

*Caruth v. Pinkney,* 683 F.2d 1044, 1049 (7th Cir.1982). Awarding retroactive attorney's fees in this case amounts to nothing more than an unexpected windfall from the public treasury to the plaintiff's attorney; certainly, Congress did not intend the EAJA to be merely a godsend to attorneys who performed legal services prior to the effective

date of the EAJA, or to be a "relief fund for lawyers." *See, e.g., Hensley v. Eckerhart*, —— U.S. —— at ——, 103 S.Ct. 1933 at 1938, 76 L.Ed.2d 40 (1983) quoting 122 Cong.Rec. 33, 314 (remarks of Sen. Kennedy regarding Civil Rights Attorney's Fees Awards Act of 1976).

Our Supreme Court has ruled that it is outside the competence of judges to "pick and choose among plaintiffs and statutes under which they sue and to award fees in some cases but not in others." *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975). "Congress, however has full authority to make such decisions, and it responded to the challenge of Alyeska by doing the 'picking and choosing' itself." *Hensley v. Eckerhart*, —— U.S. at ——, 103 S.Ct. at 1936. (Brennan, J., concurring in part and dissenting in part). Here the majority has resorted to "picking and choosing" in the face of the contrary intent of the EAJA.

Furthermore, I disagree with the majority's conclusion that awarding retroactive attorney's fees will advance the purpose of the EAJA by "*prospectively* deter[ing] unreasonable government action." It is important to note that the summary judgment order against the government on the underlying merits of the plaintiff's case was issued on August 14, 1981, more than six weeks before the EAJA became effective. Certainly, the summary judgment order in this case has exactly the same effect on the future actions of the government, regardless of whether the plaintiff's attorney is now awarded retroactive attorney's fees or if, on the other hand, he receives no compensation for his services, as was the original understanding when he accepted the case. Therefore, I reject and fail to understand the majority's weak and hollow theory that *retroactively* awarding attorney's fees under the EAJA will somehow "prospectively deter unreasonable government action."

### IV.

In conclusion, I would hold that the EAJA authorizes courts to award attorney's

fees only for services rendered on or after the Act's effective date of October 1, 1981. The majority's decision, and the decisions of the other circuits also permitting retroactive recovery of attorney's fees under the EAJA, fail to adequately consider the important legal principle that "a waiver of traditional sovereign immunity cannot be implied but must be unequivocally expressed," *Army and Air Force Exchange Service v. Sheehan*, 456 U.S. 728, 102 S.Ct. 2118 at 2122, 72 L.Ed.2d 520, and further violate the time-honored rule of statutory construction mandating only prospective application of statutes in the absence of a clear, strong and imperative legislative expression to the contrary. Moreover, the legislative purpose of the EAJA will in no way be furthered by granting lawyers a windfall of retroactive attorney's fees at the government's expense. I dissent from the majority's decision to authorize recovery of attorney's fees incurred prior to the effective date of the Act, since that decision amounts to an unwarranted judicial extension of the liability imposed on the public treasury by the EAJA. I believe that it is the role of Congress and not the courts, to legislate in this area. "Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their conceptions of prudent public policy." *United States v. Rutherford*, 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979).